OSCAR TAYLOR *vs.* JOHN D. SULLIVAN.

January 30, 1891.

**Public Officer—Tenure until Qualification of Successor—Election of Ineligible Successor—Quo Warranto.**—The incumbent of an office, the term of which is for a specified period, "and until his successor is elected and qualified," is entitled to retain the office after the lapse of the specified period, in the event of the election of another person to succeed him, who is ineligible; hence, he has such an interest in such election that he may invoke a decision as to its legality.

**Same—Person Ineligible when Elected, but Eligible when Official Term Begins.**—The constitution, making persons of foreign birth, who have not declared their intention to become citizens of the United States, ineligible to any elective office, disqualifies such persons from being legally elected. They are not entitled to hold office even though, after being elected, they declare their intention to become citizens.

Application for a writ of *quo warranto.* Motion by respondent to dismiss.

*Taylor, Calhoun & Rhodes,* for petitioner.

*Theo. Bruener,* for respondent.

DICKINSON, J. By this proceeding, the relator seeks an adjudication as to the right of the respondent to hold the office of county attorney of Stearns county, for which office he received a majority of the votes cast at the general election in 1890. The point of contention is whether the respondent was legally elected, and can hold the

office under such election, he being of foreign birth, and having never declared his intention to become a citizen of the United States until after such election. The contention that the relator has no such private interest in the matter as justifies him to invoke a decision upon it, is not sustained. The relator was elected to the office at the election in 1888, qualified and entered upon the discharge of its duties. He is still the incumbent of the office, unless he has been superseded by the respondent, or unless a vacancy has occurred by force of the statute. The term of office for which the relator was elected was "two years, and until his successor is elected and qualified." Gen. St. 1878, c. 8, § 210. If the election of the respondent was not legally authorized, the relator would continue to hold the office by force of this express provision of the statute. *State* v. *Benedict*, 15 Minn. 153, (198;) *People* v. *Tilton*, 37 Cal. 614. The case in this particular is distinguishable from that of *County of Scott* v. *Ring*, 29 Minn. 398, (13 N. W. Rep. 181.) We therefore hold that the relator's interest entitled him to call in question the legality of the respondent's election.

We come then to the question of the right of the respondent to hold the office by virtue of his election in 1890. It appears that at the time of the election, the respondent was not a citizen of the United States, and had not declared his intention to become a citizen, conformably to the laws of the United States upon the subject of naturalization. He relies, however, upon the fact that after the election, and before the commencement of the term of office for which he was elected, he duly declared his intention to become a citizen; and so the fact is shown to be. It is not to be questioned that at the election in 1890, the respondent was not entitled to vote at any election in this state. The constitution (article 7, §§ 1, 2) so declares. Section 7 of the same article reads: "Every person who, by the provisions of this article, shall be entitled to vote at any election, shall be eligible to any office which now is, or hereafter shall be, elective by the people in the district wherein he shall have resided thirty days previous to such election, except as otherwise provided in this constitution, or the constitution and laws of the United States." This was intended as a restriction, and it has the effect of a constitutional dec-

laration that *only* such persons as by the provisions of this article are entitled to vote shall be "eligible" to any elective office. We need not dwell upon this proposition, for the argument for the respondent virtually concedes it. He rests his case upon the proposition that this restriction refers merely to the *holding* of office, and not to *elections*, and hence that he was legally entitled to the office, because his disqualification was removed before the commencement of the term, although subsequent to the election.

This question has not been heretofore decided in this state. The terms of the statute construed in *Territory* v. *Smith*, 3 Minn. 164, (240) were such that the decision has no bearing upon the construction of the very different language of the constitutional provision under consideration. The case of *Barnum* v. *Gilman*, 27 Minn. 466, (8 N. W. Rep. 375,) relating to a different constitutional provision, did not involve the question here presented, although language was used in the opinion of the majority of the court in harmony with the contention of this respondent. Our inquiry is as to the meaning of the word "eligible" as used in the constitution. In Webster's Dictionary its meaning is defined to be, "proper to be chosen; qualified to be elected." In this and the cognate words derived from the same source, (the Latin verb *eligere*,)—the idea primarily involved is that of choosing, selecting. It is expressed in our verb "to elect," derived from the same Latin word. This primary and strictly proper signification of the word "eligible" is also its well-understood popular meaning. If we had adopted the form "electable" for the adjective instead of following more nearly the form of the verb from which it is derived, the meaning might have been more obvious, but it would not have been different. There seems to be no sufficient reason why the proper and ordinary meaning should not be given to the word "eligible," in the constitution, as though it had read, "no person shall be *qualified to be elected*," etc. This is the plain and natural construction of the language, and the other provisions with which that immediately under consideration is associated, add to the probability that this word was intended to refer to the *election* to office, and not merely to the holding of office. The whole article relates to the elective franchise. It declares the disability of certain classes, including persons of for-

eign birth who have not declared their intention to become citizens of the United States, to vote at any election. That declared disability certainly relates to the time when an election takes place. Closely associated with this is the provision in question, which in legal effect declares that the persons thus disqualified to vote shall not be "eligible to any office" elective by the people. Neither the proper signification of the language, nor the context, justifies the conclusion that at this point there is an abrupt transition in the subject from *elections* to the *holding of office.* Elsewhere in the constitution we do find express provision relating to disqualification for holding office, as in section 11 of article 6, and in section 9 of article 4. ·

Again, the positive and unambiguous restriction upon the right to vote at any election is in itself a reason supporting the conclusion that when the disqualified classes are declared to be ineligible to any elective office, it was meant that they could not be legally elected, or "electable," if we may use such a word. There is little reason to suppose that it was intended that persons who by reason of their alienage, or for other specified reasons, were expressly excluded from the right to vote at any election, should still be deemed qualified to be elected to any office. In *State* v. *Murray,* 28 Wis. 96, it was considered to be a fundamental principle of popular government, even in the absence of any constitutional or statutory restriction, that one who is not a qualified elector cannot legally hold an elective office. According to the opinion of Ryan, C. J., in the later case of *State* v. *Trumpf,* 50 Wis. 103, (5 N. W. Rep. 876, and 6 N. W. Rep. 512,) this proposition should in principle be more broadly stated, and only such persons as are themselves electors *at the time of the election* should be deemed to be eligible to office. We think that this must certainly be so considered under a constitution which in effect declares that only such persons shall be eligible to elective offices.

The construction which we place upon the constitution is supported by *Searcy* v. *Grow,* 15 Cal. 118; *State* v. *Clarke,* 3 Nev. 566; *State* v. *McMillen,* 23 Neb. 385, (36 N. W. Rep. 587.) In *Smith* v. *Moore,* 90 Ind. 294,—followed in *Vogel* v. *State,* 107 Ind. 374, (8 N. E. Rep. 164,)—the word "eligible" was construed as referring to the time of the commencement of the term for which a person is elected. The

dissenting opinion of Elliott, J., referring to the earlier decisions in that court, is worthy of attention.

Our conclusion is that as the case now appears, the respondent was not legally elected to the office, and that his subsequent declaration of his intention to become a citizen does not entitle him to hold the office. It is therefore ordered that the respondent's motion to dismiss the order to show cause be denied, and that the application of the relator for a writ of *quo warranto* be granted.