## W. R. KELLY v. GEORGE FERGUSON, *County Judge.*

### No. A-1032.    Opinion Filed April 4, 1911.

#### (114 Pac. 631.)

1.    **JUDGES—Disqualification—Proceedings for Change.** Where a defendant in a criminal case, either in the county court or district court, seeks to secure a change of judge, he must comply with section 2016, Snyder's Comp. Laws Okla. 1909.

2.    **SAME.** An application for a change of judge must set forth fully the grounds—that is to say, the facts upon which the claim is made that the judge is disqualified—and this application must be filed with the clerk of the court, and reasonable notice of the application must be given to the county attorney, so that both the judge and the county attorney may know what the application claims and the facts upon which this claim is based. After such notice, the application for a change of judge must be presented to such judge. If such judge concedes that he is disqualified, he will certify his disqualification as requested, but, if the judge does not admit his disqualification, he will refuse to make such certificate. A petition may then be filed in this court for a writ of mandamus to require such judge to disqualify himself.

3.    **SAME.** Where an application for a change of judge has been presented to the trial judge, it is improper for him to hear testimony and attempt to judicially determine the question of his disqualification. He either certifies his disqualification or refuses to do so upon his personal knowledge.

4.    **MANDAMUS—Proceedings to Disqualify Judge—Sufficiency of Petition.** When a petition for writ of mandamus is presented to this court to require a judge to disqualify himself, such petition must be confined to the grounds set up in the original application which was presented to the trial judge and of which the trial judge and the county attorney had notice.

5.    **SAME—Scope of Hearing.** Upon the hearing of a petition for a writ of mandamus to require a judge to disqualify himself, this court will proceed on the petition and response thereto and the original application, and will hear oral evidence or receive affidavits either in support of or in opposition to the issues raised, as the justice of the case may require.

6.    **JUDGES—Disqualification.** A disqualified judge should carefully abstain from taking any part in the selection of the person who is to preside in his place in the trial of a cause in which he has been disqualified.

7.   **SAME—Sufficiency of Showing.** For a showing which author-
     ized the issuance of a writ of mandamus requiring the judge to
     disqualify himself, see facts stated in the opinion.

(Syllabus by the Court.)

Mandamus by W. R. Kelly against George W. Ferguson,
Judge of the County Court of Blaine County. Writ granted.

*Seymour Foose,* for petitioner.

*J. P. Wishard* and *C. F. Dyer,* for respondent.

FURMAN, PRESIDING JUDGE. Petitioner, W. R. Kelly, be-
ing prosecuted in the county court of Blaine county, Okla., for
the offense of criminal libel, filed with the clerk of said court an
application for a change of judge, alleging in substance that re-
spondent, Hon. George W. Ferguson, the regular judge of said
county court, was so biased and prejudiced against petitioner
that petitioner could not have a fair and impartial trial before
said judge. In support of this general charge, a great many facts
were alleged in the application upon which the claim was made
that respondent was disqualified to try petitioner, and upon which
respondent was requested to certify to such disqualification. Due
notice was given to the county attorney of Blaine county of this
application. The county attorney filed a general denial of the
facts stated in the application. The matter was set down for
hearing, and evidence and affidavits were introduced in support of
and in opposition to the application. We do not think that this
practice is contemplated by the statute. In the case of *Lewis v.
Russell,* 4 Okla. Cr. 132, 111 Pac. 818, in a well-considered opin-
ion by Judge Richardson, this court said:

"The act approved March 22, 1909, was intended to regulate
those matters, and the portion thereof pertinent to the present
case (section 2016, Snyder's Comp. L. Okla.) reads as follows:
'Any party to any cause pending in a court of record may in
term time or in vacation file a written application with the clerk
of the court, setting forth the grounds or facts upon which the
claim is made that the judge is disqualified, and request him to
so certify after reasonable notice to the other side, same to be
presented to such judge and upon his failure so to do within three

days before said cause is set for trial, application may be made
to the proper tribunal for mandamus requiring him so to do.'
Under this section it is necessary that the application for a
change of judge be filed with the clerk of the court below; that
it set forth the grounds—that is to say, the facts upon which
the claim is made that the judge is prejudiced—and that the
same be presented to such judge, reasonable notice thereof being
first given to the prosecution. If the application is in compliance
with the statute, and the judge concedes that he is prejudiced, he
certifies his disqualification as requested. On the other hand, if
the application be in proper form, but the judge does not admit
his disqualification and therefore refuses to make the certificate, a
petition may be filed for a writ of mandamus to require him to
do so; and the question of his disqualification will then be tried
out and determined in the appellate court upon the petition, the
response, and such proof as may be there offered. But the filing
of an application with the clerk below in full compliance with
the section above quoted is a prerequisite to the procuring of the
writ. The facts upon which the claim of prejudice is made must
he set out in the application, so that the judge and the other side
may know what is claimed and upon what the claim is based; and
it is not sufficient to set these facts out for the first time in the
petition for the writ. *Myers v. Bailey,* 26 Okla. 133, 109 Pac. 820;
*Mayes v. Pitchford,* 26 Okla. 132, 109 Pac. 821; *Ex parte Hudson,*
3 Okla. Cr. 393, 106 Pac. 540, 107 Pac. 735."

It is evident that the statute never intended that a judge
should hear evidence and judicially pass upon the question of
his own prejudice. Such a trial would be almost sure to result
in an unseemly contest, just as it did in this case. As the prac-
tice touching this matter does not seem to be fully understood
by the profession, we will reiterate what we said in the case of
*Ex parte Hudson,* 3 Okla. Cr. 400, 106 Pac. 543:

"While the Constitution prohibits the trial of a case before
a prejudiced judge or juror, yet it is silent as to the manner in
which the question of prejudice is to be decided. The machinery
by which this should be determined, either as to judge or juror,
is a proper subject of legislation. Manifestly a judge would have
no more right to pass upon his bias or prejudice than a juror would
have to decide as to his qualifications, for it is a fundamental
principle of law that no one should be permitted to be a judge

when his own interests are involved. In case of juror, if a juror admits his disqualification, that settles it. If the juror denies disqualification, the trial judge passes upon that issue, and error of the trial court may be reserved for the determination of the appellate court. Under the statute now under consideration, if the trial judge admits his disqualification, he so certifies, and the election of a special judge takes place. If he does not regard himself as disqualified, he refuses or fails to so certify. Then the question can be presented to the appellate court by petition for mandamus. This secures to the defendant his right to have the matter of the prejudice of the trial judge adjudicated, and, if such prejudice is made to appear, his constitutional right to a trial before an unprejudiced judge will be protected. Upon the other hand, society will also be protected from having trials delayed indefinitely by allegations of the prejudice of the trial court, when as a matter of fact no such prejudice exists, and the attempt to disqualify the judge is made solely for the purpose of delay and to defeat the enforcement of justice."

When the application for a change of judge was presented to respondent in this case, he should have acted upon it, as it was when presented to him; and, if he declined to certify to his disqualification, the petitioner should have presented a petition for a writ of mandamus to this court to require respondent to do so, and the question of his disqualification would be tried out and determined before this court upon the petition, the response, and such proof as may be here offered. The facts upon which the claim of prejudice is based must be set out in the original application, so that the judge and the county attorney may know what is claimed and upon what such claim is based. It is not sufficient to set out these matters for the first time in the petition to this court for the writ. In other words, the petition for the writ must show that the facts upon which it is based were alleged in the original application. Upon the trial the issues involved may be supported or controverted in such manner as is competent in mandamus proceedings. We want to make it clear that the trial in cases of this kind does not take place in the lower court. It is illegal and absurd to place a judge upon trial be-

fore himself. Such a trial would manifestly be a miserable farce. No man is competent to sit in judgment upon his own conduct or when his individual integrity or feelings are involved. The fact that he assumes that he is competent to do this is conclusive evidence of the fact that he is incompetent to properly discharge this judicial duty. Where an application for a change of judge is made, and such judge recognizes that the alleged facts upon which the application is made are sufficient and true, he should so certify, and that would settle the matter so far as his connection with the case is concerned; but, if he feels that the alleged facts stated in the application are untrue or are insufficient in law, he should decline to take any action at all, and allow the matter to be determined by mandamus in the appellate tribunal. In this way only can justice be done. We are therefore of the opinion that respondent should not have attempted to hear testimony and judicially determine the question of his own prejudice. The respondent, however, opened court and placed Hon. George W. Ferguson regularly on trial before himself. Witnesses were summoned and sworn, and testimony was introduced and considered, and the court listened to argument by counsel as to the state of mind and mental condition of Hon. George W. Ferguson, and, being thus "well advised," rendered the following judgment in favor of the said Hon. George W. Ferguson:

"Now, on this 6th day of December, A. D. 1910, the court proceeds to hear the application of the defendant for a change of judge heretofore filed in said case. The plaintiff is present by C. F. Dyer, county attorney, and the defendant is present in person and by his attorneys, Ed Baker and Seymour Foose. And now the court after hearing and considering evidence both on behalf of the defendant in support of said application and upon behalf of the state opposing said application, and after being well advised, the court overrules said application, and holds that the application and evidence is not sufficient to disqualify the Honorable George W. Ferguson, county judge and presiding judge of said court in said case, and the court refuses to certify that said presiding judge is disqualified to preside in, hear, try or render judgment in said case and refuses to allow the defendant a

change of judge; to all of which the defendants excepts.   George W. Ferguson, County Judge."

From the affidavit of Hon. Seymour Foose, hereinafter set forth in full, it appears that the court was in doubt as to the mental condition of the Hon. George W. Ferguson, and was disposed to grant the change of judge until after he heard the evidence and argument in the trial above referred to.   It is difficult for us to treat this matter seriously.   It sounds more like a joke than it does like a judicial proceeding.   It is the first instance that has come to our knowledge in which a judge has placed himself on trial before himself, and we truly hope that nothing of this sort will ever occur again in the state of Oklahoma.   A regular case-made containing all of the proceedings on this hearing is before us as an exhibit attached to the petition for the writ of mandamus.   In the reply to the petition for mandamus respondent admitted some of the facts stated in the application for a change of judge, but denied most of them, and upon the question of bias and prejudice the answer of respondent is as follows:

"Your respondent specifically and emphatically denies that he is biased or prejudiced against your petitioner in any manner whatever, and submits and affirms that all of plaintiff's said petition for a writ of mandamus in this court specifically and pointedly sets out a full and complete case of bias and prejudice existing by and on behalf of the petitioner as against your respondent."

Thus respondent asserts that, while he was himself free from bias or prejudice against petitioner, the petitioner had made out a full and complete case of bias and prejudice existing on the part of petitioner against respondent.

The papers filed before us in this case by petitioner and respondent cover nearly 100 pages of closely typewritten matter. We cannot incorporate in this opinion all of the allegations and affidavits of the parties and the testimony of witnesses which are contained in the record; neither is it necessary or important that we should do so.   We deem it sufficient to call attention to the affidavit of Hon. Seymour Foose, which appears in the record

5 Cr—21

and which was in no manner contradicted or denied by respondent, and which is as follows:

"In the County Court of Blaine County, State of Oklahoma. Affidavit of Seymour Foose in Support of Application of Defendant for Change of Judge. The State of Oklahoma, Plaintiff, v. W. R. Kelly, Defendant. State of Oklahoma, Blaine County ss.: Seymour Foose, being duly sworn, deposes and says: That he is attorney for defendant in said case. That on the 3d day of December, A. D. 1910, affiant, representing the state, appeared in said court before the Honorable George W. Ferguson, county judge, presiding in the matter of the hearing on the application of defendant for a change of judge, and the following occurred in substance and effect, to wit: The county judge asked the county attorney what he had to say as to the application and the latter answered that he had nothing to say at present; that it seemed to be a personal matter between the defendant and the judge, and he would leave it to the judge to decide whether he would grant the application or overrule it. Whereupon, the county judge said he would grant the change of judge, but he wanted affiant and the county attorney to agree upon a proper person to try the case, before he granted the change; that they ought to be able to agree upon some one that would be satisfactory. Thereupon, after some conversation between the affiant and the county attorney in reference to the selection of a special judge, they failed to agree, and the affiant presented a journal entry of an order sustaining the application and disqualifying the said county judge in the case to the county attorney and the county judge, and the former said it was all right if the judge wanted to grant the change of judge; but the latter refused to sign it, or to make the order, but said the county attorney after consulting the prosecuting witness, and the affiant after consulting the defendant, ought to be able to agree on a satisfactory judge to try the case, and that he wanted them to do this before he acted upon the application. Whereupon, affiant objected to being required to agree on a substitute for a judge as a condition to having the application sustained, and to being required to act in the matter of agreeing under such a form of compulsion, and objected to being required to agree upon another judge before the order was made granting a change of judge, and stated that the law provided the procedure for agreement on another judge or his election in case an agreement could not be had to take place after the regular

judge had been disqualified; and affiant submitted the application and demanded that it be heard, and a ruling, decision, and order made thereon at that time. This the county judge refused, and then the further proceedings were had as shown by the minutes thereof in the records of the court. Seymour Foose. Subscribed in my presence and sworn to before me this 6th day of December, A. D. 1910. Beulah Malcomb, Clerk County Court. [Seal.]"

We do not question the perfect good faith of respondent in this matter. We know from everyday personal experience and observation that all men are more or less prejudiced at times against some person or in some manner, and that as a rule they are not conscious of the existence of such prejudice. It is neither a crime nor a disgrace for a man to be prejudiced. In fact, circumstances often arise under which a man would be either more or less than human if he were not prejudiced. Prejudice is something which no man can see, and which can only be shown by words or conduct, indicating that condition of the mind or heart. We see no occasion in this record to question the honesty and good faith of respondent, but many circumstances are presented which indicate strong bias on the part of respondent against petitioner. Upon the hearing of this matter before respondent, petitioner was forced to take the witness stand, and over the constant objection and exception of his counsel, although he was the defendant in the criminal cause out of which this proceeding grew, respondent forced petitioner to submit to a rigid cross-examination, and to answer all such questions as were asked him by the county attorney. Respondent was willing to certify to his disqualification; provided petitioner would agree on some one to act as judge in the place of respondent who would be acceptable to the prosecuting witness. This alone shows that respondent should not preside at the trial of petitioner. The writer of this opinion many years ago heard a reputable citizen denouncing a judge for granting a change of venue in a case upon the ground that the defendant could not obtain a fair and impartial trial in the county where the cause was pending. He said, "Why, of course, he can get a fair trial and justice here, for every man in the county knows that

he ought to have his neck broken." This man was honest in his belief that the defendant could obtain a fair and impartial trial without a change of venue. From his standpoint a change of venue was an outrage. He honestly thought that the defendant ought to be hung, and could not see and did not think that there was but one side to the case, and his idea of justice was that the case should be tried by those who were acceptable to the private parties who were prosecuting the defendant, just as respondent attempted to force upon petitioner in this case. There is no provision of law authorizing a private prosecutor to have any voice in the selection of a trial judge. The county attorney does not represent the private prosecutor, but he represents the entire people of the state, and it is his duty, as it is also the duty of the judge, to be entirely impartial in the discharge of his duties and not to be controlled by any private parties or persons interested in the trial of a criminal case. Our Constitution by express provision protects the citizens of this state against private prosecutions. For a full discussion of this question, see *Hartgraves v. State* (decided at this term), *ante*, 114 Pac. 343.

A judge whose feelings against a defendant is so strong that he is not willing to vacate the bench and allow some one else to take his place until he can receive a positive assurance that the defendant will be tried by a judge who is acceptable to the prosecuting witness can hardly be said to be in an entirely impartial frame of mind. Rev. Cotton Mather, one of the best and ablest men that America ever produced, and his associates, doubtless felt that they were entirely impartial and that they were simply performing an unpleasant Christian duty when they were having women burned as witches. No one ever questioned their honesty, but all deplore their mistaken zeal. Any attempt upon the part of a disqualified judge to influence the selection of his successor. is a violation of the spirit if not of the letter of the law, and might be ground for setting aside a verdict of conviction We have

time and again announced that absolute fairness must characterize every step taken in the progress of a criminal trial in Oklahoma.

The writ of mandamus will issue as prayed for.

ARMSTRONG and DOYLE, JUDGES, concur.