STATE *ex rel.* WEST, *Atty. Gen.,* v. BRECKINRIDGE.

No. 3070.    Opinion Filed April 2, 1912.

Rehearing Denied October 4, 1912.

(126 Pac. 806.)

1.    **COUNTIES**—Officers—Resignation.    The resignation of a county officer, addressed to the board of county commissioners, and lodged in the office of the county clerk, while such office is open, and to which the attention of the clerk is called, is a valid one, and, in the absence of a different time fixed therein, the resignation takes effect immediately upon its deposit in such office.

2.    **SAME.**    The statute is silent as to whom the resignation of a county officer shall be addressed; but it is most appropriate to address it to the board of county commissioners, for the reason that, except where otherwise provided, such board fills vacancies in county offices.

3.    **OFFICERS** — ''Eligible'' — Holding Other Office.    Section 1597, Comp. Laws 1909, provides: ''Nor shall any county attorney, while in office be eligible to or hold any judicial position whatever.''    Held, that the word ''eligible,'' as used in the statute, means ''legally qualified to hold office,'' and does not mean ''eligible to be elected or appointed to a judicial office.''    Under this statute, a county attorney may be either elected or appointed to a judicial position, while holding the office of county attorney, and will be eligible to qualify for such judicial position, if his term as county attorney has expired by law, or been terminated by resignation, prior to the time it is necessary to qualify for the judicial office.

4.    **JUDGES**—Appointment—Term of Office.    The superior court of Tulsa county came into existence under the general provisions of Superior Court Act, secs. 1965-1976, inclusive (Comp. Laws 1909), on July 20, 1910, the date the population of Tulsa county, and the

city of Tulsa, was officially made known by the United States Census Bureau; and at a time when the office could not be filled by the election of a judge at the general election of 1910. Held, that the vacancy in the office of judge of such county would, unless filled by appointment, extend to the time at which a judge could be elected by the people; and, if filled by appointment, the appointee would hold until a judge of the superior court could be legally elected to succeed him.

5. **OFFICERS—Vacancies—Occurrence and Existence of Vacancies.** Upon the coming into existence of an office provided for by the laws of the state, there is, ipso facto, a vacancy in office.

6. **JUDGES—Appointment—Vacancy.** The superior court is not a county court, and the judge thereof is not a county officer, and a vacancy in the office of superior judge is to be filled by appointment of the Governor.

7. **SAME—Term of Office.** The limitation of the term of an appointee to the office of judge of the superior court, providing that such term should expire January 9, 1911, applies only to judges appointed under the act, and whose successors could be elected at the general election of 1910. It does not apply to appointees for those courts coming into existence under a subsequent census at a time when successors could not be elected in 1910.

8. **COUNTIES—Officers—Resignation—"Deposited."** Under Comp. Laws 1909, sec. 4792, providing that resignations of elective officers may be made by filing or "depositing" such resignation in the office of the county clerk, where a resignation is in fact reived in the office while it is open by those in charge, even temporarily, and the attention of the clerk is called to it, it is "deposited" within the meaning of the law.

(Syllabus by Brewer, C.)

Original proceedings by the State, on the relation of Charles West, Attorney General, for *quo warranto* to M. A. Breckinridge. Judgment for defendant.

*Charles West,* Atty. Gen., *W. C. Reeves,* Asst. Atty. Gen., and *Bayard T. Hainer,* for plaintiff.

*Biddison & Campbell* and *Davidson & Williams,* for defendant.

Opinion by BREWER, C. This is an original proceeding in *quo warranto,* brought in this court by the state, upon the relation of the Attorney General, to oust the defendant M. A. Breckinridge from the office of judge of the superior court of Tulsa county. The case consists of amended petition, answer, reply, and proof in the form of depositions.

The grounds alleged, in the amended petition, for ousting the defendant are: First. That the defendant was not eligible at the time of his appointment, or at the time of his qualification, to become judge of the superior court, because at such times he was holding the office of county attorney of Tulsa county. Second. That the defendant never, in fact, became judge of such court, because his attempt at qualification and his assumption of the duties of the office were after the expiration of the term for which he was appointed.

The material facts are as follows: Defendant was elected county attorney of Tulsa county at the general election in 1907, filed his oath of office, and assumed and performed the duties of such office, and received the emoluments thereof up to, and including January 7, 1911. At 6:45 p. m. January 7, 1911, he sent the following telegram from Oklahoma City: "Board of County Commissioners, Tulsa, Okla. Gentlemen: I have today resigned as Co. Attorney. M. A. Breckinridge." This message was delivered at the office of the county clerk of Tulsa county at 7:05 p. m. the day it was sent. It was received and opened by the county treasurer, who officed in the same room with the clerk. The evidence is conflicting as to the exact time the county clerk saw and read the telegram. The treasurer says as soon as he received it he gave it to the clerk. The clerk says it was probably as late as 8:30 when he saw and read it. The chairman of the board of county commissioners was called up on the telephone that same evening, and the telegram was read to him. The telegram was left in the office of the county clerk. After sending the telegram, and shortly before 7:40 p. m. January 7, 1911, the defendant received from the Secretary of State, duly signed and sealed, the Governor's commission as judge of the superior court. Defendant proceeded by first train to Tulsa, but arrived there shortly after midnight, Saturday, the 7th of January. He qualified by taking the oath of office at one minute past 12 o'clock Monday morning, January 9, 1911, and assumed, and has ever since been exercising, the duties of the office of judge of the said court. About 500 cases, civil and criminal, have been filed in the court, many of them having been finally disposed of.

Superior courts were created by a general act of the Legislature, approved March 6, 1909, and this act is found in Comp. Laws 1909, beginning with section 1965 and extending to and including section 1976. The portions material to this inquiry are:

"Section 1965. There is hereby created and established in every county in this state having a population of thirty thousand (30,000) or more, and having a city therein with eight thousand (8,000) or more, as now or hereafter shown by the last federal census, a court of civil and criminal jurisdiction," etc.

"Section 1967. The said court shall be presided over by one judge whose qualifications shall be the same as are required for district judges and who shall be a resident of the county for which he shall have been elected or appointed. The regular term of such judge shall be four years," etc.

"Sec. 1968. Upon the approval of this act, the Governor shall appoint a judge for each of said courts, who shall serve until the second Monday in January, A. D. 1911, and the judge of said court shall, by order of record, fix the terms of said court at not less than four terms each year; provided, that the first term of said court shall begin as soon as practicable after said court is organized under the provisions of this act."

"Sec. 1969. At the general election of county officers to be held in the year 1910, and at every similar election every fourth year thereafter, the qualified electors of such county wherein a superior court has been established, as provided in this act, shall elect a judge of said court for such county to serve from the second Monday of the following January until the second Monday in January four years thereafter and until his successor shall be elected and qualified."

As has been seen, there are but two main questions presented here, but each of them involves a number of other propositions, some of which it may be necessary to discuss, others of which it may not be necessary to investigate. Counsel of both sides are to be commended for their industry in briefing the case, for they have pursued every possible theory that might, in any way, become involved in the consideration of the controlling questions.

First. Was the defendant eligible to be appointed to the office when he was appointed? The Attorney General contends that he was not. First, because he had not resigned when appointed; second, that under the law the county attorney was not

eligible to be appointed to a judicial position. The defendant answers these contentions by saying: First, that he had resigned as county attorney before receiving his commission; second, that the county attorney is eligible to be chosen; or appointed, to a judicial position, although he could not hold' such position while such attorney. The statute cited and relied upon by the state to sustain the contention it makes of ineligibility is part of section 1597, Comp. Laws 1909: "Nor shall any county attorney, while in office, be eligible to or hold any judicial position whatever." It seems that the reasonable construction of this clause is that the ineligibility mentioned is limited to the time "while in office," and that, if prior to receiving his commission as judge, the defendant had as a matter of fact resigned, being therefore "not in office," he was not within the terms of the statute when he received his commission. Had he resigned? The county attorney being admittedly a county officer, the law applicable to his resignation is: Section 4792, Comp. Laws 1909:

"Resignations may be made as follows: (4) Of all elective county officers, by filing or depositing such resignation in writing in the office of the county clerk, * * * which resignation, unless a different time is fixed therein, shall take effect upon such filing or deposit."

The facts show, without dispute, that the telegram stating that defendant "had resigned the office of county attorney" had been received in the office of the county clerk before the commission as judge was delivered. The treasurer who opened the telegram at the clerk's desk testifies the clerk was present. The clerk testifies he came in later in the evening and received the telegram. Be that as it may, no one disputes the fact that at the time the commission as judge was received by defendant the resignation was, in fact, in the office and on the desk of the county clerk. The statute does not in terms require it to be filed. It only requires it to *be deposited in the office of the county clerk, etc.* Webster's International Dictionary defines the word "deposit" thus:

"That which is deposited, or laid or thrown down; that which is placed anywhere, or in any one's hands, for safe keeping; something intrusted to the care of another."

We do not wish to be understood as meaning that a resignation, surreptitiously slipped into the office of the clerk, would meet the letter or spirit of the law; but that where it is in fact received in the office while it is open by those in charge, even temporarily, and the attention of the clerk is called to it, as in this case, it was deposited therein within the meaning of the law. The sufficiency of the telegram is also challenged, but its purpose and the intention of defendant, to relieve himself of the obligations of the office of county attorney, seem to be so obvious as to need neither analysis nor extended consideration.

It is also urged that the section (4792) relating to resignations, *supra,* has been modified by section 10, art. 23, of the Constitution by the words: "Provided that all officers within this state shall continue to perform the duties of their offices until their successors shall be duly qualified." We understand the argument on this point to be, that no officer can be relieved, or relieve himself, of his office until his successor shall have duly qualified. We think the language had a very different purpose. It follows the provision prohibiting an extension of the term of an officer beyond the period for which he was elected or appointed, and was intended to modify that provision so as to extend the term until the successor was qualified. We cannot assent to the contention made as to the effect of this provision.

The state also makes complaint that the resignation is addressed to the board of county commissioners. The statute prescribes no form for a resignation, and makes no provision as to whom it shall be addressed. The county clerk is, however, the clerk of the board of county commissioners, and the custodian of their records, etc. (Comp. Laws 1909, sec. 1607), and must attend their meetings. The meetings of the commissioners must be held in the county clerk's office. Comp. Laws 1909, sec. 1657. The defendant probably knew the resignation so addressed would reach its proper place, the clerk's office; and, while the statute is silent as to whom a resignation shall be addressed, we think it most appropriate that in cases of county officers it be addressed to the board of county commissioners, for the very good

reason that they fill vacancies in county offices. Comp. Laws 1909, sec. 4798.

On the second point made by the state on this phase of the case—i. e., that under section 1597, Comp. Laws 1909, the county attorney was not eligible to appointment—we have examined with care the cases relied upon as authority. The two leading cases supporting the contention are by the Supreme Court of Nebraska, and are *State v. Boyd,* 31 Neb. 682, 48 N. W. 739, 51 N. W. 602, and *State v. Moores,* 52 Neb. 786, 73 N. W. 304, wherein the word "eligible" is defined by the Nebraska Supreme Court, and it was there held that the word meant "capable of being chosen" as contradistinguished from "right to qualify" at a time after election. But the provision under discussion was: "Any person who is in default as collector or custodian of public money or property shall not be eligible to any office of trust or profit," etc. The Nebraska court relied on its previous decisions, and also on certain early decisions of California (*Searcy v. Grow,* 15 Cal. 117; *People v. Leonard,* 73 Cal. 230, 14 Pac. 853; *State v. Clarke,* 3 Nev. 566), also on *Carson v. McPhetridge,* 15 Ind. 327; *Jeffries v. Rowe,* 63 Ind. 592, and a case from Minnesota (*Taylor v. Sullivan,* 45 Minn. 309, 47 N. W. 802, 11 L. R. A. 272, 22 Am. St. Rep. 729). In *Ward v. Crowell,* 142 Cal. 587, 76 Pac. 491, the California Supreme Court reviews its earlier decisions, distinguishes them, and holds that a person not qualified to hold an office at the time of his election, but who became qualified before entering upon the office, could hold it.

In the later case of *Hoy v. State,* 168 Ind. 506, 81 N. E. 509, 11 Ann. Cas. 944, the Indiana Supreme Court distinguishes and limits the effect of its earlier decisions, and holds that, although a candidate is disqualified to hold an office at the time of his election to it, yet, if he can and does remove the disqualification before entering into the office, he can hold. See, also, *Smith v. Moore,* 90 Ind. 294; *Brown v. Goben,* 122 Ind. 113, 23 N. E. 519. The earlier Wisconsin decisions were modified in later ones, and in *State v. Trumpf,* 50 Wis. 103, 5 N. W. 876, 6 N. W. 512, it was held that an alien at the time of election, having been naturalized before the commencement of the term of office to which

he had been elected, became eligible to hold it. The Nevada case has been considered and its reasoning criticised by the Supreme Court of Indiana (*Smith v. Moore, supra*), and by the Supreme Court of Kansas in *Demaree v. Scates,* 50 Kan. 275, 32 Pac. 1123, 20 L. R. A. 97, 34 Am. St. Rep. 113. The opinion of the Kansas court by Chief Justice Horton also disapproves of the reasoning of the Minnesota case (*Taylor v. Sullivan,* 45 Minn. 309, 47 N. W. 802, 11 L. R. A. 272, 22 Am. St. Rep. 729). The syllabus to the Demaree case, *supra,* is:

"Gen. St. 1889, par. 1622, provides that 'no person holding any state, county, township, or city office or any employer, officer, or stockholder in any railroad in which the county owns stock, shall be eligible to the office of county commissioner.' Gen. St. Oct. 31, 1868, c. 25, sec. 12. *Held,* that the word 'eligible,' as used in the statute, means 'legally qualified'; that is, capable of holding office. The term 'eligible,' as used, does not mean 'eligible to be elected to the office of county commissioner at the date of the election, but eligible or legally qualified' to hold the office after the election; that is, at the commencement of the term of office."

In *State v. Van Beek,* 87 Iowa, 569, 54 N. W. 525, 19 L. R. A. 622, 43 Am. St. Rep. 397, the subject is fully discussed, and the court says:

"Any person who can qualify himself to take and hold an office is eligible to it at the time of the election."

So far as we have been able to investigate, it seems the doctrine contended for by the state finds its main support in the cases from Nebraska and the case from Nevada. The cases relied on by the Nebraska court have, in the main, been overruled, modified, or limited in their effect by later decisions of the court rendering them, and the reasoning of the Nevada case has been criticised by Indiana and Kansas. The undoubted weight of authority is that in statutes or constitutional provisions, where the disqualification to hold office is in language of similar import to that of the section of our law under consideration, the word "eligible" means *"legally qualified to hold office,"* and does not mean "proper to be chosen for office." The following cases are in point: *State v. Murray,* 28 Wis. 96, 9 Am. Rep. 489; *DeTurk v. Commonwealth,* 129 Pa. 151, 18 Atl. 757, 5 L. R. A. 853, 15 Am. St. Rep. 705; *Bradfield v. Avery,* 16 Idaho, 769, 102 Pac.

687; *State v. Huegle et al.*, 135 Iowa, 100, 112 N. W. 234; *State v. Hamilton et al.*, 24 Ill. App. 609; *Kirkpatrick v. Brownfield*, 97 Ky. 558, 31 S. W. 137, 29 L. R. A. 703, 53 Am. St. Rep. 422; *Vogle v. State*, 107 Ind. 374, 8 N. E. 164; *Privett v. Bickford*, 26 Kan. 52, 40 Am. Rep. 301.

In this case the term of the defendant as county attorney expired on the day he qualified as judge, but had not expired, unless through the operation of the resignation, on the date of his appointment. From the authorities cited we have no doubt but that, under our statute, a county attorney may be either elected or appointed to a judicial position during his term of office as county attorney, and that he will be legally eligible to qualify for such judicial position, if his term as county attorney has expired by law, or been terminated by resignation, prior to the commencement of the judicial term.

The second proposition—*i. e.*, that defendant never became judge for the reason that the term for which he was appointed expired before he qualified—will now be considered. Before proceeding to its discussion, however, we premise by disposing of two questions, which are considered of vital importance. The first is that Tulsa county was not entitled to a superior court under the census of 1907, and that, therefore, the court was not one of those created *in praesenti* upon the passage of the act of March 6, 1909. And that the court in that county came into existence on July 20, 1910, the date the population of the county and city of Tulsa, as determined by the federal census, was made known. This has been determined by this court in the case of *State ex rel. Brennan v. Shelton et al.*, 27 Okla. 322, 111 Pac. 545, which held:

"It is pleaded in the petition, and undenied, that a federal census was taken in the said city and county of Tulsa during the months of April and May, 1910, as of the 15th day of April, 1910, and that on July 20, 1910, the director of the federal census officially determined and declared the population of Tulsa county to be more than 30,000 and of the city of Tulsa to be more than 8,000. Under section 3267 of the statute, *supra*, the primary election in the year 1910 fell on the 2d day of August; hence the last day for the filing of the petitions for the position to which relator aspires expired July 3, 1910, and as the official determina-

tion of the population of Tulsa county and city was not declared by the director of the official census until July 20, 1910, it follows that no provision could have been made prior to July 3, 1910, for the election of a judge of the superior court of that county at the election to be held on November 8, 1910, for the reason that, under the provisions of the law creating the superior court, a county became entitled to such court only when, as shown by the last federal census, it had a population of 30,000 and a city therein of 8,000. Under the previous census, Tulsa county was not entitled to a superior court, and only became entitled to such court when its population reached the number fixed by law as shown by the last federal census. It is therefore clear that on June 4, 1910, when plaintiff filed his petition to have his name placed upon the ballot as an independent candidate for judge of the superior court, there was no such office existing within Tulsa county. It only became entitled to such court on July 20, 1910, or when it was shown by the last federal census that the requisite population existed."

It has further been determined by this court in *Chickasha Cotton Oil Co. v. Lamb & Tyner,* 28 Okla. 275, 114 Pac. 333, that the superior court is not a county office, and that the judge of the superior court is not a county officer:

"Although the territorial jurisdiction of the superior court of Custer county is confined to the limits of a county, it is not a county court, nor a part of the county government. It does not deal with the business affairs of the county. Its functions are purely judicial. It exercises one of the high powers of the state government, to wit, judicial power, and, owing to the extent of its jurisdiction, is, as a court of original jurisdiction, one of high character. It has original jurisdiction in all offenses against the state committed within its territorial jurisdiction and of all civil causes, except probate matters. Its jurisdiction of subject-matter is more comprehensive than that of the district courts. The mere fact that its presiding officer is selected by a single county and is paid by that county does not make such officer a county officer."

Under the above decisions, there was no superior court in Tulsa county that could be supplied with a judge by the electorate in the November election of 1910. When the census of 1910 was made known, July 20, 1910, the office came into being by operation of the general law (Superior Court Act). When the office came into being, there was, *ipso facto,* a vacancy in the office.

*Knight v. Trigg,* 16 Idaho, 256, 100 Pac. 1060; *State v. City of Butte,* 41 Mont. 377, 109 Pac. 710.

There being a vacancy in the office, *eo instanti,* upon its coming into being, and it being other than a county office, the power to fill the vacancy was lodged in the Governor by both the Superior Court Act and by the constitutional provision (section 13, art. 6), which provides:

"When any office shall become vacant he (Governor) shall, unless otherwise provided by law, appoint a person to fill such vacancy, who shall continue in office until a successor shall have been duly elected or appointed, and qualified according to law."

Taking into account our judicial knowledge of the statutes of the state relating to elections, and applying it to the facts here, we find that this vacancy was either one which would cover the period to the time the office could be filled by election, or there was a vacancy the period of which would be divided into two parts. One vacancy up to January 9, 1911, and another part thereof, to continue until the election at which a judge could be provided. It seems far more reasonable to take the first position; that is, that, when the office came into being empty, there was a vacancy that, unless filled, would continue up to the time it could be filled by election. To hold otherwise would be to hold that, under the conditions here, the first part of this vacancy would be filled up to January 9, 1911, by one appointment, then another appointment, from the same source, would be necessary to keep an incumbent in the office until the election. If this is correct, that the vacancy was one, extending as to term, from the creation of the office, to the time it could be filled by the people, then when the Governor filled it by appointment, the power was exhausted. *Marbury v. Madison,* 1 Cranch, 137, 2 L. Ed. 60. And the incumbent would hold under the Constitution until his successor was legally chosen and qualified.

The contention of the state that the term of this initial vacancy expired January 9, 1911, is presented with force, and is founded on the provision of the Superior Court Act (section 1968, Comp. Laws 1909) providing:

"Upon the approval of this act, the Governor shall appoint a judge for each of said courts, who shall serve until the second Monday in January, 1911," etc.

This language, it is contended, fixes the period in which defendant could hold absolutely because of the provision of section 10, art. 23, Constitution:

"Nor shall the term of any public official be extended beyond the period for which he was elected or appointed."

But it overlooks the proviso to this same section:

"Provided all officers within this state shall continue to perform the duties of their offices until their successors shall be duly qualified."

The state further overlooks the fact that the language of the Superior Court Act, "who shall serve until the second Monday in January, 1911," is not peculiar to this act alone. The identical provision so much stress is laid on, as distinguishing or rendering peculiar this particular office, applied to practically every officer of the state who was elected at the time of the adoption of .the Constitution, or appointed by the administration that came into power under it. Relating to county and township officers, section 18 of the Schedule has the following language:

"Provided, that the term of office of those elected at the time of the adoption of this Constitution, or appointed under the provisions of the laws extended in force in the state, shall expire on the second Monday of January, 1911."

And under section 6, art. 7, Constitution, the terms of two of the Supreme Court justices shall expire "at the close of the day next preceding the second Monday in January, 1911." Under section 4, art. 6 (Const.), the terms of state officers 'elected at the time of the adoption of the Constitution shall "expire on the second Monday of January, 1911." The Superior Court Act further provided for an election to fill these offices at the general election of 1910. It is clear, then, that this act, in so far as it related to the term of office of appointees under it, was drawn in perfect harmony with the Constitution and other general laws relating to offices, with the manifest purpose that the appointees in those courts, for which a judge could be elected in 1910, should go out of office, and deliver it up to their successors at the same

time and under the same conditions required of all other offi-·cers· of the state either elected or appointed. And it certainly was not intended that this provision should apply to any of such courts not capable of being filled in the election of 1910; for, if so, we would have the absurd result of the term of appointees to fill courts coming into being at some later census, say 1920, ter-minating, under this clause, years before they were appointed or there was· a place to fill. But let us consider this act further, and see if the contention can be sustained. The act provides that the appointments of judges should be made on the ‚‛approval" of the act. It was approved March 6, 1909. The office in this case did not exist until for more than a year after the approval, and other superior courts will probably come into being with the census of 1920, or at some intervening census. Of course, the appointments for these offices, to come into being in the fu-ture, could not have been made according to the strict letter of the act. Nor was there any such intention in the minds of the legislators. They knew that under the 1907 census a number of the populous counties had the requisite population, and that the court provided for would come into existence, in such coun-ties, upon the approval of the act. Therefore it must be plain that the clause in the act relating to the appointments, and when the appointees should go out of office, related to the appointments that could ·be legally made under it at a time when their succes-sors could be elected at the general election in 1910; thus pro-curing uniformity and harmony, in the election, going out of office, and in the induction into office, of the officers of the state.

This leads to the conclusion that the defendant is legally holding the office of judge of the superior court of Tulsa county, and that he is entitled to hold and perform the duties and func-tions of same, until the first general election, at which a superior court judge may be legally elected by the people.

By the Court: It is so ordered.