ARVEL WILMOTH v. STATE.

No. A-10078. Dec. 2, 1942.

(131 P. 2d 774.)

William A. Tidwell, of Idabel, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Ed Shipp, County Atty. of McCurtain County, of Idabel, for defendant in error.

BAREFOOT, P. J.  Defendant, Arvel Wilmoth, was charged in the county court of McCurtain county with the unlawful possession of intoxicating liquor, to wit: 29 pints of whisky; was tried, convicted, and sentenced to pay a fine of $100, and to serve 90 days in the county jail, and has appealed.

For reversal of this case it is contended: First, that the county judge of McCurtain county erred in refusing to disqualify himself to try the case of this defendant; second, that the court refused to permit defendant to properly qualify the jury on voir dire examination; third, that the court erred in refusing to suppress the evidence because of having been secured by illegal search and seizure.

Oklahoma Statutes 1931, sections 2911, 2915, O. S. A. (Stat. 1941), Title 22, §§ 571 and 575, provide for the disqualification of a trial judge and the latter section provides for the procedure to be followed in securing his disqualification.  It is as follows:

"Disqualification of judge, claim of—Mandamus.— Any party to any cause pending in a court of record may in term time or in vacation file a written application with the clerk of the court, setting forth the grounds or facts upon which the claim is made that the judge is disqualified, and request said judge so to certify, after reasonable notice to the other side, same to be presented to such judge, and upon his failure so to do within three days before said cause is set for trial, application may

be made to the proper tribunal for mandamus requiring him so to do."

In the instant case the application was not made until the case was called for trial. No application was filed whereby the trial judge could certify his disqualification "within three days before said cause is set for trial".

This court, in the early case of Lewis v. Russell, 4 Okla. Cr. R. 129, 111 P. 818, 819, in construing the above statute said:

"Under this section it is necessary that the application for a change of judge be filed with the clerk of the court below; that it set forth the grounds—that is to say, the facts upon which the claim is made that the judge is prejudiced—and that the same be presented to such judge, reasonable notice thereof being first given to the prosecution. If the application is in compliance with the statute, and the judge concedes that he is prejudiced, he certifies his disqualification as requested. On the other hand, if the application be in proper form, but the judge does not admit his disqualification, and therefore refuses to make the certificate, a petition may be filed for a writ of mandamus to require him to do so; and the question of his disqualification will then be tried out and determined in the appellate court upon the petition, the response, and such proof as may be there offered. But the filing of an application with the clerk below in full compliance with the section above quoted is a prerequisite to the procuring of the writ. The facts upon which the claim of prejudice is made must be set out in the application so that the judge and the other side may know what is claimed and upon what the claim is based; and it is not sufficient to set those facts out for the first time in the petition for the writ. Myers v. Bailey, 26 Okla. 133, 109 P. 820; * * * Ex parte Hudson, 3 Okla. Cr. 393, 106 P. 540, 107 P. 735. In the present case no pretense was made of complying with the statute in this respect, and therefore there was nothing upon which to

base the petition for the writ of mandamus. The writ is therefore denied".

See, also, Kelly v. Ferguson, 5 Okla. Cr. R. 316, 114 P. 631; Rourke v. Bevis, 171 Okla. 392, 42 P. 2d 898; Fisk v. Venable, 61 Okla. Cr. R. 360, 68 P. 2d 425; Castleberry v. Jones, 68 Okla. Cr. R. 414, 99 P. 2d 174.

From an examination of the record in this case, the evidence offered by the defendant was not, in our opinion, sufficient to support the contention that the trial judge was disqualified. The main contention is that the trial judge had been assistant county attorney prior to his appointment as county judge. He resigned this position on February 1, 1941. The offense occurred on February 27, 1941, and the information was filed on March 7, 1941. The resignation was presented to the board of county commissioners and a minute made in the commissioners' proceedings on February 3, 1941. Counsel for defendant relies upon the proposition that the resignation was not effective until it had been accepted by the board of county commissioners. This proposition is answered by the statute itself. Oklahoma Statutes 1931, section 3409, O. S. A. (Stat. 1941), Title 51, § 9, which provides resignations may be made as follows:

"Resignations.—Resignations may be made as follows: * * * 4. Of elective county officers, by filing or depositing such resignation in writing in the office of the county clerk, except that of county clerk, which shall be filed or deposited with the board of county commissioners, which resignations, unless a different time is fixed therein, shall take effect upon such filing or deposit. * * * 6. Of officers holding their offices by appointment, to the body, board, court or officer that appointed them".

Under this statute the resignation had become effective prior to the time the crime was committed and

the charge filed. See State v. Breckinridge, 34 Okla. 649, 126 P. 806.

The second assignment of error arises by reason of certain questions attempted to be propounded to prospective jurors. The first question was with reference to the validity of the search and as to whether the juror would consider the question in passing upon the question of defendant's waiving his constitutional rights. The court properly sustained an objection to this question and gave as a reason therefor that a question of the legality or illegality of the search was a question of law for the court and not a question of fact for the jury. This was proper. Other questions propounded were with reference to the same matter and we do not find that the court erred in sustaining an objection thereto.

The third assignment of error attacks the legality of the search. The facts upon which it is based are as follows: The sheriff of McCurtain county and one of his deputies had occasion to visit the C. C. C. camp which was situated one mile west of Idabel. As they passed defendant's place they saw him talking to a party in an automobile. As they returned from the C. C. C. camp they saw defendant going across an open field, carrying a large bag which, to them, seemed very heavy. The deputy sheriff followed the defendant, who was unaware that he was being followed. The deputy testified as follows:

"* * * he set the bag down and taken out this package of whisky, and started on about 15 or 20 steps, and I was in 40 steps of him, and I says, 'Wait a minute'."

He further testified:

"I hollered and says, 'Wait a minute'. He stopped and turned around. He had a package of whisky in his hand. I said, 'Come here', and he started coming to me.

I was on one side of the fence and he was on the other. I walked up and said, 'Give me that', and he handed it to me. I walked to the bag, about 15 or 20 steps, and there was a bag of whisky. I put the package back in there and I said, 'Well, let's go'. Q. Before he ever saw you, before you ever said anything to him, you had seen him set it down and take the package of six out and start off like he was going to hide it? A. Yes, sir. * * *"

Re-direct examination:

"Q. Now, Mr. Rountree, you have been deputy sheriff about six years, or a little over? A. Four years, going on five. Q. You have caught lots of whisky since you have been deputy sheriff? A. Yes, sir. Q. This package Orville had under his arm, that is the way bonded whisky is wrapped, isn't it? A. Yes, sir. Q. And you have caught a lot of it wrapped that way? A. Yes, sir. Q. And that is what it is? A. Yes, sir."

Re-cross examination:

"Q. One more question. When you walked up to the barrack bag, it was open, and you could see the whisky, like that? A. Yes, sir. Q. It was not wrapped up, after he took the package? A. Yes, it was in open view. I saw it as I passed it going to him".

Defendant was arrested by the deputy sheriff and these charges were the outgrowth of this arrest. No search warrant was had by the officer at the time of the arrest. Under the evidence it was unnecessary to have one, as the defendant was committing a misdemeanor in the presence of the officer by transporting intoxicating liquor.

An examination of the record reveals that this defendant was given a sentence of a fine of $100 and 90 days in jail. There is nothing in the record to show that this defendant had ever been previously convicted of a violation of the prohibition or any other law and, while he had 29 pints of whisky in his possession, we are of

the opinion that justice will be best served by reducing the sentence to a fine of $100 and 30 days in jail and, as so modified, the judgment and sentence of the county court of McCurtain county is affirmed.

DOYLE and JONES, JJ., concur.