## JOSEPH PAUL OPATZ, BY LEONA KATHERINE DLUGOSCH, HIS GUARDIAN AD LITEM, v. CITY OF ST. CLOUD AND ANOTHER.

196 N. W. 2d 298.

March 20, 1972—No. 43634.

*Gerald L. Seck,* Minnesota Public Interest Research Group, for appellant.

*Richard J. Ahles,* City Attorney, for respondents.

PER CURIAM.

This is an appeal from an order of the district court discharging an alternative writ of mandamus which had theretofore been issued.

The facts are not in dispute. Appellant, Joseph Paul Opatz, is a 19-year-old student at St. Cloud State College. He is qualified to vote in the

next general election to be held in the State of Minnesota and is duly registered to vote in the city of St. Cloud. On or about February 24, 1972, appellant sought to have his name placed on the ballot in the city of St. Cloud municipal primary election, to be held on March 27, 1972, as a candidate for nomination for first ward city alderman. His request having been refused by the city clerk, he sought a writ of mandamus to compel inclusion of his name on the ballot. Following a hearing held March 7, 1972, the judge of the district court issued the order discharging the writ.

Prior to the 1970 election, the Minnesota Constitution provided in relevant part:

"Article VII

Elective Franchise

"ELECTIVE FRANCHISE. Section 1. Every person of the age of twenty-one years or more * * * who has resided in this state six months * * * next preceding an election shall be entitled to vote * * *.

\* \* \* \* \*

"RIGHT TO HOLD OFFICE. Sec. 7. Every person who by the provisions of this article shall be entitled to vote at any election shall be eligible to any office * * * elective by the people * * *."

At the 1970 election, a proposal to amend our Constitution was submitted to the people and was ratified. The proposal read:

"Shall the Constitution of the State be amended to reduce the age requirement for voting from 21 to 19 years and provide an age requirement of 21 years to hold elective and public office?

"Yes ————
"No ————" [1]

It is the contention of appellant that the amendment as submitted to the people contravenes Minn. Const. art. 14, § 1, which reads:

"\* \* \* If two or more alterations or amendments shall be submitted at the same time, it shall be so regulated that the voters shall vote for or against each separately."

Appellant argues that the proposal combined two amendments in a single proposition and that the people were not permitted to vote on each separately.

Prior to the 1970 amendment, a person had to be 21 years of age in order to vote, and under Minn. Const. art. 7, § 7, the age at which a person could vote established the age at which he could hold office.

---

[1] See, L. 1969, c. 996, § 2, for the proposal as passed by the legislature.

A strict construction of art. 14, § 1, arguably could support the position of appellant. However, that is exactly the construction we rejected in Fugina v. Donovan, 259 Minn. 35, 104 N. W. 2d 911 (1960), where we held that an amendment permitting the legislature to extend the term of any session for not more than 30 days beyond 90 legislative days combined with a provision that legislators could serve as notaries and seek election to other offices did not contravene art. 14, § 1. Similarly, in Winget v. Holm, 187 Minn. 78, 244 N. W. 331 (1932), we upheld an amendment to our constitution relating to the taxation of national banks and also authorizing income taxes.

In these cases we recognized the difficulties of applying art. 14, § 1, literally and strictly,[2] and we discussed the apparent purposes behind this constitutional provision. In the Fugina case, referring to the amendment under consideration, we concluded (259 Minn. 38, 104 N. W. 2d 914):

"Both parts of the proposed amendment have to do with a single article of the constitution and with the legislative department. While not necessarily related, they may be rationally related since both have to do with the burdens of being a legislator."

We think the same is true here. Only a single purpose was intended by the amendment adopted by the people—namely, to change the voting age from 21 years to 19. The amendment was couched in language clearly indicating that what was intended was to reduce the voting age only, retaining the age formerly required for holding office. If we were looking for ways to nullify the amendment under strict construction of art. 14, § 1, it could probably be argued that changing the voting age as provided in art. 7, § 1, also changed the age at which office could be

---

[2] Two lines of reasoning have evolved in states having constitutional provisions similar to Minn. Const. art. 14, § 1. Some of the cases are discussed in Winget v. Holm, 187 Minn. 78, 82, 244 N. W. 331, 332 (1932). For a more detailed discussion of the subject, see 45 Minn. L. Rev. 291. Under Winget we adopted the so-called liberal rule in the following language (187 Minn. 86, 244 N. W. 334): "It is not enough [for invalidity] that a proposed amendment contains several propositions which could have been submitted in separate amendments. But the changes proposed must be independent and unrelated so as not to fit in with the one general aim or purpose of the amendment framed." The liberal rule adopted in Winget was followed in Fugina v. Donovan, 259 Minn. 35, 104 N. W. 2d 911 (1960), which is discussed in the law review case comment cited above.

held, which was tied to the age at which a person could vote, and that therefore the amendment included two separate provisions. But from a more practical point of view it is clear that only a single purpose was intended, and that was to change the voting age.

If we can reasonably sustain what the legislature intended, it should be done. In Fugina we said (259 Minn. 39, 104 N. W. 2d 915):

"* * * [W]e must also bear in mind that the courts owe great deference to the judgment of the legislature as to matters properly within its purview. It does not appear that permitting the propositions of c. 89 to be presented as a single proposal will frustrate the objectives of art. 14, § 1. The proposal is simple and clear enough to be understandable to an ordinary citizen and is not misleading. While the logical relationship between the propositions involved is somewhat remote, and perhaps as remote as is permissible, yet it exists; and the relative importance of the propositions makes it not unreasonable that they be joined. In these circumstances, the controlling consideration is the deference due the legislative judgment that this is a proper proposal to amend the constitution."

Again, the same is true in the case at bar. While it might be true that some people might have voted to accept one proposition and to reject the other, had there been separate proposed amendments regarding the voting age and the retention of the age at which office could be held, the language of the amendment was clear enough that it can hardly be said that any voter was misled by the proposal.

Appellant next contends that, even if the amendment as adopted does no violence to art. 14, § 1, denying those who may vote the right to hold office is a denial of equal protection of the laws under the Fourteenth Amendment of the United States Constitution. By the adoption of the Twenty-sixth Amendment of the United States Constitution, which became effective on July 7, 1971, the voting age was lowered to 18 years. It is apparently appellant's contention that, inasmuch as the right to hold office under our former law was geared to the age at which a person could vote, denial now of the right to hold office until a person is 21, when he can vote at 18, is a denial of equal protection of the law.

We see no merit in this contention. The amendment adopted by the voters of Minnesota applies equally to all citizens of the state. There is no discrimination against any class or group. Even the brief of appellant states (p. 27):

"* * * While a state may make reasonable classifications to effect a constitutionally permitted purpose, such classifications must be reasonable and logically related to the purpose of the classification."

Here there is no attempt to exclude certain classes from the right to hold office. While appellant seems to intimate that the amendment was aimed at college students, there is nothing in the record to sustain that contention. The amendment applies equally to college students as well as to individuals not in college; the age requirement for the right to hold office applies to all individuals alike. The same age requirement existed prior to adoption of the amendment. Unless we are to apply the reasoning that the age at which a person formerly could hold office was controlled by the age at which he could vote, there is no room for any conclusion that there has been any change in the age at which he can hold office.

As a matter of fact, there are many provisions in the Minnesota and in the United States Constitutions fixing the age at which certain individuals may hold office. For instance, Minn. Const. art. 5, § 3, requires a person to have attained the age of 25 years in order to be elected governor or lieutenant governor; the United States Constitution provides a minimum age for members of Congress and for the President.

Nor does the fact that other states have lowered the age of maturity or the age for holding office require that Minnesota do so. If our people choose to change our constitution, they have a perfect right to do so, but that is not the function of the courts.

The only remaining question is whether the Twenty-sixth Amendment of the Constitution of the United States superseded art. 7, § 7, of our constitution as amended. We hold it did not. It had no such purpose, nor is it necessary so to hold in order to effectuate the amendment to the United States Constitution.

We recognize that this case involves many serious constitutional problems. Unfortunately, the time given us for decision does not permit a thorough research or discussion of all the issues not directly involved in this case. Consequently, we refrain from attempting to answer any question not required for a decision of the case now before us. The decision should be applied to the facts of this case, and we leave for future determination the solution of other problems that might arise such as the problem raised by the dissent.

Affirmed.

TODD, JUSTICE (dissenting).

I must dissent from the majority opinion in so far as it holds that that portion of the amendment adopted by the Minnesota voters in 1970 dealing with age requirements to hold public office does not violate the equal protection clause of the United States Constitution. The amend-

ment in question was submitted to the voters of Minnesota pursuant to L. 1969, c. 996, which reads as follows:

"*An act proposing an amendment to Article VII, Section 1 and Section 7, of the State Constitution to reduce the age requirement for voting to 19 years and establish an age requirement for elective public office.*

"Be it enacted by the Legislature of the State of Minnesota:

"Section 1. There is hereby proposed to the people of the state for their approval or rejection an amendment to Article VII, Sections 1 and 7, of the Constitution to reduce the age requirement for voting from 21 to 19 years and provide an age requirement of 21 years to hold elective public office, which sections if amended will read as follows:

"Section 1. Every person of the age of (TWENTY-ONE) *19* years or more who has been a citizen of the United States for three months and who has resided in this state six months and in the precinct for thirty days next preceding an election shall be entitled to vote in that precinct, and the place of voting by one otherwise qualified who has changed his residence within thirty days preceding the election may be prescribed by law.

"Sec. 7. Every person who by the provisions of this article shall be entitled to vote at any election *and is twenty-one years of age* shall be eligible to any office which now is, or hereafter shall be, elective by the people in the district wherein he shall have resided thirty days previous to such election, except as otherwise provided in this Constitution, or the Constitution and law of the United States.

"Sec. 2. The proposed amendment shall be submitted to the people at the general election for the year 1970 in the manner provided by law. The question to be submitted to the people is:

" 'Shall the Constitution of the State be amended to reduce the age requirement for voting from 21 to 19 years and provide an age requirement of 21 years to hold elective public office?

" 'Yes ————
        No ————'

"Approved June 6, 1969."

The stated purpose is to lower the voting age to 19 years and to establish an age requirement of 21 years for elective public office. The act is directed solely to art. 7, §§ 1 and 7, of our constitution. The act makes no reference to art. 4, § 25, of our constitution which provides as follows:

"Senators and representatives shall be qualified voters of the State,

and shall have resided one year in the State and six months immediately preceding the election in the district from which they are elected."

It must be presumed that the legislature was fully cognizant of all the provisions of our constitution at the time of the adoption of L. 1969, c. 996. To hold that art. 4, § 25, was included in the question submitted to the voters of Minnesota, and passed upon by them, involves a stretching of judicial interpretation beyond any bounds that I know of or would be willing to concede.

As a result of the actions of the legislature and the vote of the people of Minnesota, we have attempted to amend our constitution to provide an age requirement of 21 years for elective public offices in the State of Minnesota with the exception that voters will be qualified at the age of 19 to run for election to the offices of state representative and state senator. Such a classification seems totally to fail the requirements of reasonableness established by the United States Supreme Court. Rinaldi v. Yeager, 384 U. S. 305, 308, 86 S. Ct. 1497, 1499, 16 L. ed. 2d 577, 580 (1966). See, also, Developments in the Law—Equal Protection, 82 Harv. L. Rev. 1065.

The right to hold public office has been held to be a fundamental right. Turner v. Fouche, 396 U. S. 346, 362, 90 S. Ct. 532, 541, 24 L. ed. 2d 567, 580 (1970). Where fundamental rights are involved, the state, not the person claiming infringement, has the burden of showing a compelling governmental interest in the classification adopted, and, absent such a showing, the state action is unconstitutional even if there is a reasonable basis for the classification. Shapiro v. Thompson, 394 U. S. 618, 89 S. Ct. 1322, 22 L. ed. 2d 600 (1969). See, also, Reynolds v. Sims, 377 U. S. 533, 84 S. Ct. 1362, 12 L. ed. 2d 506 (1964).

Nor can I agree with the statement of the majority that, since the amendment applies equally to all citizens of the state, there is no discrimination against any class or group. In McLaughlin v. Florida, 379 U. S. 184, 191, 85 S. Ct. 283, 288, 13 L. ed. 2d 222, 228 (1964), Mr. Justice White, speaking for the court, said:

"Judicial inquiry under the Equal Protection Clause, therefore, does not end with a showing of equal application among the members of the class defined by the legislation. The courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose * * *.

"Normally, the widest discretion is allowed the legislative judgment in determining whether to attack some, rather than all, of the manifestations of the evil aimed at; and normally that judgment is given the benefit of every conceivable circumstance which might suffice to char-

acterize the classification as reasonable rather than arbitrary and invidious."

Applying these rules of law to the instant case, I can conceive of no reasonable basis for establishing within the class of 19- and 20-year-old voters, authorized by the amendment to our constitution, a prohibition against holding all the various public offices within the State of Minnesota, except the offices of state representative and state senator. It would seem to require substantial mental gymnastics to claim that the office of city councilman in our various municipalities requires the maturity of a person aged 21 while requiring that our state legislators need be only 19.

For these reasons I would hold that that portion of the amendment adopted by the voters of our state which purports to change art. 7, § 7. is violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution and is therefore invalid.

I would hold that appellant is entitled to have his name placed on the ballot for election to the office of city council in the city of St. Cloud. Since appellant is 19 years of age, I do not reach or discuss the effect of the Twenty-sixth Amendment to the United States Constitution, adopted July 7, 1971, which lowered the voting age to 18.

As stated in the majority opinion, the time element in this case precludes a thorough and complete discussion of all the constitutional elements involved, or a complete review and citation of all the authorities considered in rendering this opinion.