## THADDEUS V. JUDE AND ANOTHER v.
## ARLEN I. ERDAHL AND ANOTHER.

207 N. W. 2d 715.

May 11, 1973—No. 43901.

*William J. Keppel,* for petitioner Jude.
*Peter H. Benzian,* for petitioner Rafferty.
*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Solicitor General, *Byron E. Starns,* Special Assistant Attorney General, *George M. Scott,* County Attorney, and *David E. Culbert,* Assistant County Attorney, for respondents.

OTIS, JUSTICE.

Petitioners, Thaddeus V. Jude and Martin J. Rafferty, have brought these proceedings in the supreme court under Minn. St.

203.38 to require the secretary of state and the auditor of Hennepin County to accept their filings for the office of state representative. Petitioner Jude also sought to have his name placed on the ballot to be used in the primary election September 12, 1972. On August 25, 1972, by appropriate orders, without an opinion, we granted the application of petitioner Jude and denied the application of petitioner Rafferty. The opinion filed herewith expands on those orders.

## Petition of Thaddeus V. Jude

At the time these proceedings were commenced, petitioner Jude had attempted to file for the office of state representative from District 42A. He was not permitted to do so by defendant secretary of state because he could not comply with Minn. St. 202.04, subd. 1(e), requiring him to file an affidavit as follows: "That he is, or will be on general election day, 21 years of age or more * * *." The election was to be held on November 7, 1972, and Jude would not achieve the age of 21 years until December 13, 1972. The term for which he sought election was to begin on January 2, 1973.

As we construe the statute, it is inconsistent with Minn. Const. art. 7, § 7, and must therefore yield to the constitution. Minn. Const. art. 7, § 7, provides as follows:

"Every person who by the provisions of this article shall be entitled to vote at any election and is twenty-one years of age shall be eligible to any office which now is, or hereafter shall be, elective by the people in the district wherein he shall have resided thirty days previous to such election, except as otherwise provided in this Constitution, or the Constitution and law of the United States."

That section deals only with eligibility to hold office and not with the right to vote, which is governed by Minn. Const. art. 7, § 1. It seems clear to us that the reference to "twenty-one years of age," dealing with eligibility for office, is unrelated to the candidate's age at the time of his election. Significantly, § 202.04 it-

self, in clauses (f), (g), and (h), expressly recognizes that candidates for certain offices must achieve the age prescribed by the constitution on the day those terms begin and not on election day. By those clauses candidates are required to file affidavits stating:

"(f)  If filing to be a United States senator, that on the next January 3 he will be 30 years of age or more and nine years a citizen of the United States;

(g)  If filing to be a United States representative, that on the next January 3, or in the case of an election to fill a vacancy within 21 days after the election, he will be 25 years of age or more and seven years a citizen of the United States;

(h)  If filing to be governor or lieutenant governor, that on the first Monday of the next January he will be 25 years of age or more and on general election day he will have been a resident of Minnesota for one year."

There appears to be no rational purpose in distinguishing between those offices described in the paragraphs quoted and all other elective offices, including state representative. The statute has the effect of increasing the age requirement for eligibility to office to approximately 21 years and 2 months, and we find nothing in the constitution to intimate this intention.

Respondents cite Taylor v. Sullivan, 45 Minn. 309, 47 N. W. 802 (1891). There, the candidate was not a citizen when he filed but intended to become a citizen before his term began. We held that the word "eligible" referred to the election to office as well as to the holding of office in construing Minn. Const. art. 7, § 7. In that case, the candidate was not only ineligible to vote because he was not a citizen, but there was no certainty he would be eligible to hold office after the election. Here, on the other hand, although Mr. Jude was not eligible to hold office on the election date, he would inevitably become 21 on December 13, 1972, in time to assume office in January 1973.

In the matter of Thaddeus V. Jude, we therefore hold that Minn. St. 202.04, subd. 1(e), is unconstitutional and accord-

ingly he was entitled to have his name placed on the ballot in the primary conducted September 12, 1972.

*Petition of Martin J. Rafferty, Jr.*

This petitioner was denied the right to file for the office of state representative from District 42B because of his failure to comply with Minn. St. 202.04, subd. 1(e). Unlike petitioner Jude, however, he would not have attained the age of 21 until April 21, 1973, several months after the commencement of the term of office which he sought. The issue he raises is whether a candidate for state representative may qualify if he is entitled to vote as provided by Minn. Const. art. 4, § 25, or whether he must be 21 years of age as art. 7, § 7, directs. The question is narrowed to a construction of the words "except as otherwise provided in this Constitution" contained in art. 7, § 7. As we held in our previous order, we conclude that art. 7, § 7, as amended in 1970, controls with respect to the age requirement for a candidate for state representative and that the exception in art. 7, § 7, pertains not to the general requirement of eligibility to vote in art. 4, § 25, but only to the explicit age requirements of candidates referred to elsewhere in our constitution.

The two constitutional provisions which must be reconciled are as follows:

Minn. Const. art. 4, § 25: "Senators and representatives shall be qualified voters of the State, and shall have resided one year in the State and six months immediately preceding the .election in the district from which they are elected."

Minn. Const. art. 7, § 7: "Every person who by the provisions of this article shall be entitled to vote at any election and is twenty-one years of age shall be eligible to any office which now is, or hereafter shall be, elective by the people in the district wherein he shall have resided thirty days previous to such election, except as otherwise provided in this Constitution, or the Constitution and law of the United States."

Prior to the year 1970, the age for voting and for holding public office in the state was 21 years. On June 6, 1969, a statute was

adopted proposing a constitutional amendment reducing the voting age to 19 years and retaining the age of 21 years for eligibility for office in the following language (L. 1969, c. 996):

"Section 1. There is hereby proposed to the people of the state for their approval or rejection an amendment to Article VII, Sections 1 and 7, of the Constitution to reduce the age requirement for voting from 21 to 19 years and provide an age requirement of 21 years to hold elective public office, which sections if amended will read as follows:

Section 1. Every person of the age of (TWENTY-ONE) *19* years or more who has been a citizen of the United States for three months and who has resided in this state six months and in the precinct for thirty days next preceding an election shall be entitled to vote in that precinct, and the place of voting by one otherwise qualified who has changed his residence within thirty days preceding the election may be prescribed by law.

Sec. 7. Every person who by the provisions of this article shall be entitled to vote at any election *and is twenty-one years of age* shall be eligible to any office which now is, or hereafter shall be, elective by the people in the district wherein he shall have resided thirty days previous to such election, except as otherwise provided in this Constitution, or the Constitution and law of the United States.

"Sec. 2. The proposed amendment shall be submitted to the people at the general election for the year 1970 in the manner provided by law. The question to be submitted to the people is:

'Shall the Constitution of the State be amended to reduce the age requirement for voting from 21 to 19 years and provide an age requirement of 21 years to hold elective public office?

Yes . . . . . . . . . .
No . . . . . . . . . . ,' "

The constitutional amendments thus submitted were approved at the general election in November 1970.[1]

Petitioner Rafferty argues with considerable force that under the plain language of art. 4, § 25, a candidate for state representative need only be a qualified voter and that he, Rafferty, meets this qualification notwithstanding he is only 20 years of age. While we agree that the minimum age of 21 years specified in art. 7, § 7, cannot be wholly reconciled with art. 4, § 25, there are compelling reasons which persuade us that art. 4, § 25, must be held to have been superseded by the 1970 amendment to art. 7, § 7.

It should be borne in mind that at the time the voters approved the 1970 amendment reducing the voting age to 19, the age for eligibility to all public offices was a minimum of 21 years, including the office of state representative. To hold that the 1970 amendment reduced the age of eligibility of representatives to 19 requires a judicial determination that both the legislature and the voters intended that result in approving the amendment. This purpose is wholly absent in the proposal which was presented to the voters. The only proposition before the electorate, when it considered the amendment in November 1970, was whether to reduce the age for voting to 19 and not whether to change the age for holding elective office. Had changes in both the voting age and the age for holding elective office been intended, it might well have been a violation of art. 14, § 1, requiring that multiple amendments be submitted separately.

Regardless of whether it was by inadvertence or oversight that the amendment as submitted failed to deal expressly with art. 4, § 25, clearly those who voted on the question were led to believe that the only effect of its approval was to reduce the voting age from 21 years to 19 years without affecting the existing age for holding office. We are not inclined to construe a constitu-

---

[1] The Twenty-sixth Amendment to the United States Constitution, adopted July 5, 1971, reduced the voting age to 18 years. However, that amendment has no bearing on the issues in this case.

tional provision as basic as this to reach a result which was not intended by those who voted on the question. Therefore, while we hesitate to find an amendment by implication, that is the result we reach with respect to art. 4, § 25.

With respect to legislative intent as distinguished from the intent of the voters, the adoption of Minn. St. 202.04, subd. 1(e), requiring candidates to file an affidavit that they will be 21 years of age, lends considerable support to our construction of legislative purpose. That statute was adopted in the session which immediately followed the November 1970 approval of the amendment to art. 7. In State v. Peterson, 159 Minn. 269, 273, 198 N. W. 1011, 1012 (1924), we said:

"* * * Several courts have reasoned that the legislative exposition of a constitutional provision, following closely upon the adoption thereof, may well be supposed to result from the views which prevailed among the framers of the provision."

Petitioner urges that the words in art. 7, § 7, "except as otherwise provided in this Constitution" refer to art. 4, § 25, and make the age for election to the office of state representative the same as the age for qualifying as a voter. While we agree that the matter is not entirely free from doubt, we are of the opinion that the intent of the legislature and of the voters is better served by limiting that exception to offices where the age requirements are expressly specified, as in art. 5, § 3, dealing with the minimum age of candidates for governor and lieutenant governor, and the provisions of the United States Constitution specifying the age requirements for candidacy to Federal office. We are not persuaded that the legislature and the voters intended to single out state representatives and senators for an age requirement at variance with all other public offices. If, as we held in Opatz v. City of St. Cloud, 293 Minn. 379, 196 N. W. 2d 298 (1972), an alderman must be 21, no reason occurs to us why we must find an intent to permit members of the state legislature to serve at the age of 19. Surely, the necessity for maturity in the one is not manifestly greater than in the other.

Finally, we note that in the Opatz case we anticipated the result that we here reach. We there said (293 Minn. 381, 196 N. W. 2d 300):

"* * * Only a single purpose was intended by the amendment adopted by the people—namely, to change the voting age from 21 years to 19. The amendment was couched in language clearly indicating that what was intended was to reduce the voting age only, retaining the age formerly required for holding office."

By way of summary, we recognize that art. 4, § 25, and art. 7, § 7, present difficult questions of construction and cannot be entirely reconciled. The conclusions we reach are greatly influenced by what we deem to be the intention of the legislature and of the voters in approving the 1970 amendment. We have in mind that until the time of the amendment the minimum age for candidates for public office was 21 years and that the proposition on which the public voted expressly limited the effect of the amendment to a reduction in the voting age without affecting the age for holding public office. We conclude that candidates for the office of state senator and state representative must be 21 years of age at the date the term of office commences. The relief sought by petitioner Rafferty is accordingly denied.

Application of petitioner Jude granted; application of petitioner Rafferty denied.

TODD, JUSTICE (dissenting).

I dissent from the majority opinion in the matter of the petition of Martin J. Rafferty, Jr.

The majority opinion compounds a series of strained judicial interpretations to avoid "a result which was not intended by those who voted on the question."[1] With candor, the majority concedes its reluctance to amend our constitution by implication. Nevertheless, in so doing, the court has placed our constitution in a precarious position.

---

[1] Ante, p. 206.

This case presents a number of questions of interpretation. The first of these was the construction of the 1970 amendment itself. The majority chooses to construe this amendment narrowly and to limit its effect to lowering the voting age for elective public office. Strong arguments could be made against such a construction since, by a single question, both the matter of lowering the age to vote under Minn. Const. art. 7, § 1, and the matter of fixing the age for holding public office under art. 7, § 7, were submitted to the voters. If this were the only conclusion reached by the majority, this dissent would be unnecessary. However, this initial interpretation has become the springboard for additional judicial interpretations with which I cannot agree.

The majority next seeks to avoid the unequivocal language of art. 7, § 7, which provides that the limitations provided therein apply "except as otherwise provided in this Constitution * * *." There is no dispute that art. 4, § 25, except as interpreted by the majority, still provides that a qualified voter, meeting the residency requirements therein, may hold the office of state senator or representative. Petitioner Rafferty meets these qualifications. To disfranchise him and the voters who might have supported him in his district, the majority must add by judicial implication the words "as to age" to the above-quoted exception in art. 7, § 7, of our constitution. It should be noted that the exception contained in art. 7, § 7, existed prior to the adoption of the 1970 amendment and that amendment did not seek to add the limitation now being judicially imposed. The insertion, by judicial construction, of the words "as to age" is crucial to the majority opinion to avoid amending by implication the language of art. 5, § 3, providing a minimum age limit of 25 years for the offices of governor and lieutenant governor. Without the addition of that language, any attempt to amend art. 4, § 25, by implication would also necessarily amend art. 5, § 3, by implication. I question this judicial selection of language to achieve by implication a desired result with respect to one section of our constitution while attempting to avoid a similar result with respect to another

section. A change in art. 5, § 3, which the majority seeks to avoid, must necessarily follow the avoidance of the clear and express language of the constitution. It is impossible to imagine the language the court might next be forced to read into our constitution to select judicially the portions of the constitution that have and have not been affected by the amendment adopted by the electorate.

If one is to accept the premise of the majority, we could hold that the voters intended to lower the required age for holding the office of governor or lieutenant governor to 21 and that the excepting clause of art. 7, § 7, was repealed by implication. The question submitted to the voters at the polls is no more explicit on this proposition than it is on the issue of the age of our state senators or representatives. The language of our court in Visina v. Freeman, 252 Minn. 177, 194, 89 N. W. 2d 635, 649 (1958), is particularly applicable here:

"While this case may illustrate the need for some constitutional revision, the fact remains that the right to amend the constitution rests with the people and should not be usurped by the courts in the guise of judicial interpretation."

Next, the majority attempts to construe the amendment to implement the legislative intent. A review of the house and senate journals of the 1969 legislature shows that companion bills were introduced in the house and senate.[2] These original bills sought to amend art. 7, § 1, of the constitution by lowering the voting age to 18. Both the house and the senate files were subsequently amended to propose that art. 7, § 3, be amended to deny residency to college students at the place they were attending school.[3] The only reported senate action on its own file after the

---

[2] House File 18, introduced January 13, 1969, Journal of the House, 1969, p. 66; and Senate File 18, introduced January 14, 1969, Journal of the Senate, 1969, p. 44.

[3] Journal of the House, 1969, p. 1883; Journal of the Senate, 1969, p. 639.

introduction and first reading was committee action adding the limitation with respect to college students and recommending the bill to pass.[4] The house journal reports a series of committee actions culminating in the passage of the house version of the bill on May 22, 1969.[5] The senate acknowledged receipt of House File 18 on May 23, 1969,[6] and, after its first reading, referred the bill to the judiciary committee.[7] The bill was reported back by that committee with a recommendation that it pass with the following amendments: That the proposed amendment to art. 7, § 1, be changed to lower the voting age to 18; that the proposed amendment to art. 7, § 3, with respect to the residency limitation on college students be deleted; and that a proposed amendment to art. 7, § 7, be included purporting to limit the eligibility to hold public office to persons 21 years of age.[8] This is the first point at which any proposal to amend art. 7, § 7, appears in the published reports. The recommendation of the judiciary committee was made on May 24, 1967, and, since that was the last day the legislature could pass legislation, the rules of the senate were suspended, the bill was again amended to change the voting age back to 19, and the bill, as finally amended, was passed.[9] The bill was immediately returned to the house where it was finally passed as amended on the same day, May 24, 1969.[10] There is no mention anywhere in the Journal of the House regarding the amendment to art. 7, § 7. It is obvious that there were no public hearings in either body on the proposal for amending § 7.

The problem faced by the court is that we cannot presume lack of legislative intent despite the procedural history of the particular legislation. Nevertheless, I do not believe we should close our

[4] Journal of the Senate, 1969, p. 639.

[5] Journal of the House, 1969, p. 3756.

[6] Journal of the Senate, 1969, p. 2828.

[7] Id. p. 2830.

[8] Id. p. 2952.

[9] Id. p. 3163.

[10] Journal of the House, 1969, p. 4220.

eyes to the obvious. I do not believe we should lend judicial support to a situation created by hasty legislative action by stretching reasonable rules of interpretation to achieve a result which in effect substitutes judicial intent for legislative intent; and since the legislation in this case deals with amendments to our constitution affecting the basic rights of our citizens, we should be even more cautious.

Finally, the majority proceeds to interpret the intent of the voters at the time the amendment was adopted. Necessarily, a broad view of the legislation must be taken since a strict interpretation would prohibit the result reached in this decision. The question submitted to the voters was couched in language limited to the proposed amendments to art. 7, §§ 1 and 7, but even the broad view adopted by the majority has deficiencies which I regard as fatal. As previously indicated, it is not free from doubt which sections of the constitution are to be affected by the question submitted to the voters, referring in particular to the sections dealing with the age of legislative candidates and the age of candidates for the offices of governor and lieutenant governor.

Further, the entire legislative focus, as disclosed by the house and senate journals, was on the question of the age of voters. The record reflects the public pressure to establish the voting age at 18 instead of 19. Nothing in the record discloses any legislative history regarding the age for holding public elective office. Other than the language contained in the question submitted to the voters, there is no evidence available to show whether the age requirement for holding office was brought to the attention of the public in the 5-month period from the time of the adoption of the legislation to the time of the vote of the people. To subscribe to the voters a particular intent, as the majority has done, is to ascribe to the question submitted a clarity it is sadly lacking.

I would have granted petitioner Rafferty's request and ordered

his name placed on the ballot as the unambiguous language of our constitution requires.

MacLAUGHLIN, JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Todd.