## DAVID MEYERS AND ANOTHER v. KEN W. ROBERTS.*

246 N. W. 2d 186.

September 24, 1976—No. 46439.

*James H. Manahan,* for appellants.

*Warren Spannaus,* Attorney General, *Richard G. Mark,* Assistant Solicitor General, *Thomas H. Jensen,* Special Assistant Attorney General, and *Harris I. Darling,* County Attorney, for respondent.

TODD, JUSTICE.

In the election of November 5, 1974, plaintiff David J. Meyers ran for the office of court commissioner of Nobles County. Although Meyers' name was not included on the ballot, he received 275 write-in votes of a total of 413 votes cast. The Nobles County

---

* Appeal dismissed, 429 U. S. 1083, 97 S. Ct. 1089, 51 L. ed. 2d 529 (1977).

auditor, defendant in the case at bar, refused to certify Meyers as elected to the office because Meyers was born on March 11, 1955, and would not be 21 years of age at the time of taking office (January 2, 1975). Minn. Const. art. 7, § 6, sets 21 years of age as a minimum for holding office, and Meyers would, at the time of taking office, have been only 19 years of age.[1]

Meyers brought suit in the district court to compel the county auditor to certify him as elected to the office of court commissioner. Also named as a plaintiff was Paul L. Kegel, one of the persons who voted for Meyers in the election. On a motion for summary judgment, the district court entered judgment dismissing the plaintiffs' complaint with prejudice, and plaintiffs appealed to this court.[2] We affirm.

Initially, plaintiffs apparently argue that the right to vote, derived from the right to peaceably assemble, guaranteed in the First Amendment and applied to the states through the Fourteenth Amendment, includes an absolute right of the people of Nobles County to elect to the office of court commissioner whomever they may choose, without restriction of any sort upon that right. Plaintiffs admit that under this view of the First and Fourteenth Amendments the people would be competent to elect either a 10-year-old child or an incarcerated felon to any office. The First Amendment right to peaceably assemble may not be read as broadly as plaintiffs urge. See, Blassman v. Markworth, 359 F. Supp. 1, 7 (N. D. Ill. 1973).

---

[1] Minn. Const. art. 7, § 6, provides as follows: "Every person who by the provisions of this article is entitled to vote at any election and is 21 years of age is eligible for any office elective by the people in the district wherein he has resided 30 days previous to the election, except as otherwise provided in this constitution, or the constitution and law of the United States."

[2] Although plaintiff Meyers is now 21 years of age, the defendant county auditor apparently still refuses to certify him because he was not 21 on the original date for taking office. Plaintiffs have not argued that Meyers' attainment of the age of 21 in March of this year entitles him to certification at this time, and we do not decide the issue.

We turn to whether Minn. Const. art. 7, § 6, upon which defendant relies in his refusal to certify Meyers as elected to office, violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. Article 7, § 6, divides the voters into two classes. The favored class comprises those voters who wish to vote for a candidate 21 years of age or older, while the disfavored class comprises those voters who wish to vote for a younger aspirant to office. "[I]f a challenged state statute grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, the Court must determine whether the exclusions are necessary to promote a compelling state interest." Kramer v. Union Free School Dist. 395 U. S. 621, 627, 89 S. Ct. 1886, 1890, 23 L. ed. 2d 583, 589 (1969). Where, however, the classification affects the right to vote less drastically and affects only the exercise of the franchise for the candidate of one's choice, then it need only be found reasonably necessary to the accomplishment of important and legitimate state objectives in order to pass constitutional muster. Lubin v. Panish, 415 U. S. 709, 718, 94 S. Ct. 1315, 1321, 39 L. ed. 2d 702, 709 (1974); Bullock v. Carter, 405 U. S. 134, 144, 92 S. Ct. 849, 856, 31 L. ed. 2d 92, 100 (1972).

In Lubin and Bullock, the United States Supreme Court considered the constitutionality of California and Texas statutes which required candidates for public office to pay a filing fee in order to obtain a place on the ballot in the primary elections. Those statutes also divided the voters into two classes—the favored class comprising those voters who could afford to raise the filing fee necessary to put their candidate on the ballot and the disfavored class comprising those voters who could not. Although the court recognized that states have a legitimate interest in regulating the number of candidates on the ballot, it concluded that under the applicable standard—whether the classification was reasonably necessary to the accomplishment of legitimate state objectives—it was not enough to say that the fee requirement tended to limit the ballot to the more serious candidates.

The statutes were held unconstitutional because the classification was not reasonably necessary to accomplish the objective of limiting the ballot only to serious contenders for office; the states could, for example, have accomplished this legitimate objective by requiring that all candidates present a certain number of voter petitions in order to obtain a place on the ballot.

Minnesota has a legitimate interest in assuring that those who hold public office possess maturity, experience, and competence. Virtually the only way to accomplish this objective is to set a minimum age for holding office. It would not be feasible to conduct a hearing on the maturity, experience, and competence of each aspirant to public office, and such an individualized procedure might well run afoul of other constitutional guarantees. Having concluded that the establishment of a minimum age is necessary to insure the fitness of those who hold office in Minnesota, it follows that the attending discrimination between those candidates who are over the minimum age and those aspirants to office who are younger than the minimum age is reasonably necessary to the accomplishment of legitimate state objectives.

Besides voters, Minn. Const. art. 7, § 6, also divides aspirants to office into two classes, the favored class comprising those candidates who are over 21 years of age and the disfavored class comprising those who are younger. While there is a Federal constitutional right to be considered for public office without the burden of "invidiously discriminatory disqualifications" (Turner v. Fouche, 396 U. S. 346, 362, 90 S. Ct. 532, 541, 24 L. ed. 2d 567, 580 [1970]), the United States Supreme Court has not attached such fundamental status to candidacy as to invoke a rigorous standard of review. (But cf. Bullock v. Carter, 405 U. S. 134, 142, 92 S. Ct. 849, 855, 31 L. ed. 2d 92, 99 [1972]).

The court has emphasized on numerous occasions the breadth of power enjoyed by the states in determining voter qualifications and the manner of elections, but the court has also said that "this power must be exercised in a manner consistent with the Equal Protection Clause of the Fourteenth Amendment." Bul-

lock v. Carter, 405 U. S. 134, 141, 92 S. Ct. 849, 854, 31 L. ed. 2d 92, 98 (1972). In Lassiter v. Northampton Election Bd. 360 U. S. 45, 51, 79 S. Ct. 985, 990, 3 L. ed. 2d 1072, 1077 (1959), the court said:

"We do not suggest that any standards which a State desires to adopt may be required of voters. But there is wide scope of exercise of its jurisdiction. Residence requirements, age, previous criminal record (*Davis v. Beason*, 133 U. S. 333, 345-347) are obvious examples indicating factors which a State may take into consideration in determining the qualifications of voters."

There is a problem inherent in deciding equal-protection cases which turn on the reasonableness of an age-based classification, however. As Mr. Justice Stewart said in a separate opinion (in which he was joined by Mr. Chief Justice Burger and Mr. Justice Blackmun), concurring in part and dissenting in part, in Oregon v. Mitchell, 400 U. S. 112, 294, 91 S. Ct. 260, 349, 27 L. ed. 2d 272, 379 (1970):

"To be sure, recent decisions have established that state action regulating suffrage is not immune from the impact of the Equal Protection Clause. But we have been careful in those decisions to note the undoubted power of a State to establish a qualification for voting based on age. See, e. g., *Kramer v. Union School District*, 395 U. S. 621, 625; *Lassiter v. Northampton Election Board*, 360 U. S. at 51. Indeed, none of the opinions filed today suggest that the States have anything but a constitutionally unimpeachable interest in establishing some age qualification as such. Yet to test the power to establish an age qualification by the 'compelling interest' standard is really to deny a State any choice at all, because no State could demonstrate a 'compelling interest' in drawing the line with respect to age at one point rather than another. Obviously, the power to establish an age qualification must carry with it the power to choose 21 as a reasonable voting age, as the vast majority of the States have done."

In a footnote, Mr. Justice Stewart also expressed the further view (400 U. S. 295, 91 S. Ct. 349, 27 L. ed. 2d 379) :

"If the Government is correct in its submission that a particular age requirement must meet the 'compelling interest' standard, then, of course, a substantial question would exist whether a 21-year-old voter qualification is constitutional even in the absence of congressional action, as my Brothers point out. *Ante,* at 241-246. Yet it is inconceivable to me that this Court would ever hold that the denial of the vote to those between the ages of 18 and 21 constitutes such an invidious discrimination as to be a denial of the equal protection of the laws. The establishment of an age qualification is not state action aimed at any discrete and insular minority. Cf. *United States v. Carolene Products Co.,* 304 U. S. 144, 152 n. 4. Moreover, so long as a State does not set the voting age higher than 21, the reasonableness of its choice is confirmed by the very Fourteenth Amendment upon which the Government relies. Section 2 of that Amendment provides for sanctions when the right to vote 'is denied to any of the male inhabitants of such State, *being twenty-one years of age,* and citizens of the United States * * *.' "

We have previously decided that the state may set a minimum age for holding office greater than the voting age without violating the equal protection clause of the Fourteenth Amendment. Opatz v. City of St. Cloud, 293 Minn. 379, 196 N. W. 2d 298 (1972). Since then, only last year, the United States Supreme Court affirmed without opinion an unreported memorandum decision of a Federal District Court, Whitehead v. Westbrook (W. D. Ark. May 21, 1975, Civil No. F-74-41-C) which determined that an Arkansas statute which set 30 years as the minimum age of holding the office of city director did not deny the equal protection of the laws to an aspirant for office who was, under the Arkansas statute, denied a place on the ballot because he was only 28 years of age at the time of the election. Whitehead v. Westbrook, 423 U. S. 962, 96 S. Ct. 388, 46 L. ed. 2d 299 (1975).

It could be argued under the "reasonably necessary to accomplish a legitimate state objective" test that the appropriate disposition of this case is a remand to the district court for taking evidence on the issue whether a 19-year-old aspirant to office is, as a matter of fact, less mature, experienced, and competent than a 21-year-old candidate. Wurtzel v. Falcey, 69 N. J. 401, 354 A. 2d 617 (1976) (Mr. Justice Pashman, dissenting).

Plaintiffs next argue that the Twenty-Sixth Amendment to the United States Constitution supersedes Minn. Const. art. 7, § 6, and requires that no persons 18 years of age or older be precluded from holding office on account of age.[3] This amendment on its face applies only to the right to vote; it says nothing about the right to hold office. This court has previously decided that the Twenty-Sixth Amendment does not supersede Minn. Const. art. 7, § 6, and we adhere to those decisions. Jude v. Erdahl, 296 Minn. 200, 205, note 1, 207 N. W. 2d 715, 718 (1973); Opatz v. City of St. Cloud, 293 Minn. 379, 383, 196 N. W. 2d 298, 301 (1972).

Finally, plaintiffs argue that in Minn. Const. art. 7, § 6, the language "except as otherwise provided in this constitution or the constitution and law of the United States" refers to Minn. Const. art. 6, § 5.[4] Plaintiffs argue that the failure of the legislature to specify by law any minimum age for holding the office

---

[3] The Twenty-Sixth Amendment to the United States Constitution provides as follows: "Section 1. The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.

"Sec. 2. The Congress shall have power to enforce this article by appropriate legislation."

[4] Minn. Const. art. 6, § 5, provides as follows: "Judges of the supreme court and the district court shall be learned in the law. *The qualifications of* all other judges and *judicial officers shall be prescribed by law*. The compensation of all judges shall be prescribed by the legislature and shall not be diminished during their term of office." (Italics supplied.)

of court commissioner is an expression of its intention that there be no minimum age for the holding of that office. In Jude v. Erdahl, 296 Minn. 200, 206, 207 N. W. 2d 715, 719 (1973), we said:

"* * * [W]e are of the opinion that the intent of the legislature and of the voters is better served by limiting that exception [in art. 7, § 6] to offices where the age requirements are *expressly* specified, as in art. 5, § 3 [art. 5, § 2, in the 1974 Constitution adopted November 5, 1974], dealing with the minimum age of candidates for governor and lieutenant governor, and the provisions of the United States Constitution specifying the age requirements for candidacy to Federal office." (Italics supplied.)

We adhere to the majority view in Jude.

Affirmed.