**BITUMINOUS CASUALTY CORPORA-TION and Dennison Locker Plant, Appellants,**

v.

**Bruce SWANSON, Commissioner of the Department of Labor and Industry, State of Minnesota, Respondent,**

**and**

**John Boevers, Respondent.**

**No. C3–83–69.**

Supreme Court of Minnesota.

Dec. 23, 1983.

---

William M. Bradt, St. Paul, for appellants.

James R. Korman, Faribault, for respondent Boevers.

Hubert H. Humphrey, III, Atty. Gen., Winston E. Ehlmann, Asst. Atty. Gen., St. Paul, for respondent Swanson.

YETKA, Justice.

This is an appeal from an order by the Honorable Hyam Segell of the Ramsey County District Court denying appellants' motion for summary judgment and certifying to this court the question whether Minn.Stat. § 176.101, subd. 6 of the Workers' Compensation Act is constitutional under the equal protection clauses of the state and federal constitutions. We hold that the statute is constitutional and thus affirm the trial court.

Minn.Stat. § 176.101, subd. 6 provides:
If any employee entitled to the benefits of this chapter is a minor or is an appren-

tice of any age and sustains a personal injury arising out of and in the course of employment resulting in permanent total or permanent partial disability, for the purpose of computing the compensation to which he is entitled for said injury the compensation rate for temporary total, temporary partial, retraining, permanent partial or permanent total disability shall be the larger of either the statewide average weekly wage or the employees weekly wage, but in no case shall the compensation exceed the maximum weekly compensation rate payable under this chapter.

The statute compensates permanently disabled minors at a rate based on the larger of their weekly wage or the statewide average weekly wage. The statewide average is currently the maximum rate of compensation available under the statute. *See* Minn.Stat. § 176.101, subd. 1 (1979). Thus, a minor sustaining permanent disability will receive compensation at the maximum rate even though his weekly wage may have been well below the maximum rate. In contrast, adults are compensated at two-thirds of their wage at the time of injury up to the maximum rate. *See* Minn.Stat. § 176.101, subds. 1, 2, 3, 4 (1979). Because of this difference, a minor could receive greater disability benefits than an adult in the same job sustaining the same injury.

The material facts are not in dispute. The Dennison Locker Plant employed respondent John Boevers as a meat cutter at a wage of $3 per hour, or $120 for a 40-hour week. On October 30, 1979, Mr. Boevers injured his lower back while lifting a front quarter of beef. At the time of his injury, Mr. Boevers was 17 years old.

Bituminous Casualty insures Dennison for workers' compensation liability. Because Mr. Boevers was unable to return to work following his injury, Bituminous began paying temporary total disability benefits of $100.52 per week pursuant to Minn.Stat. § 176.101, subd. 1(2).

In December of 1979, the employee's physician issued a report indicating that Mr. Boevers had a 5% permanent partial disability of the back. Under Minn.Stat. § 176.101, subd. 6, a finding of permanent disability in a minor triggers the requirement of compensation at the larger of the employee's weekly wage or the statewide weekly average wage. Consequently, the Department of Labor and Industry instructed Bituminous to pay Mr. Boevers $226 per week, the maximum rate at that time.

Dennison did not pay Mr. Boevers any less than it paid adult workers performing the same work. The highest paid meat cutter at Dennison at the time of Mr. Boevers' injury received $5 per hour, and none of the meat cutters earned a wage which would have entitled him to the maximum compensation rate of $226 per week.

Bituminous discontinued payment to Mr. Boevers on November 17, 1981, on the ground that he was no longer eligible for benefits. The discontinuance is the subject of a claim petition presently pending before the workers' compensation division. The question before this court is not Mr. Boever's eligibility for benefits, but rather the amount of benefits if eligibility is established.

■■■ Appellants argue that because the statute allows minors to be compensated at a higher rate than similarly situated adults, employers of underage workers are denied equal protection of the laws by having to pay greater disability benefits than employers of adult workers must pay. We stated the test for evaluating the constitutionality of a workers' compensation provision in *Nelson v. State, Department of Natural Resources*, 305 N.W.2d 317 (Minn. 1981): "To survive challenge, a classification must apply uniformly to all those similarly situated; be necessitated by genuine and substantial distinctions between the two groups; and effectuate the purpose of the law." 305 N.W.2d at 319 (citing *Schwartz v. Talmo*, 295 Minn. 356, 362, 205 N.W.2d 318, 322 (1973)). The provision at issue satisfies all three of these criteria.

First, the classification between minors and adults applies uniformly to all minors

and all adults, thereby treating equally all those who are similarly situated.

Second, genuine and substantial distinctions between minor employees and adult employees necessitate this legislation. Generally, minors earn less than adults and generally minors have a longer working life ahead of them than do adults. If compensation for both groups were based only on the wage earned at the time of injury, compensation of minors would not accurately reflect their lost earning capacity over a lifetime. These distinctions justify different treatment.

Finally, this provision effectuates the purposes of the Workers' Compensation Act. The act is intended to compensate for loss of earning capacity, Minn.Stat. § 176.-021, subd. 3 (1982), and to ensure "the protection of the lives and safety of those concerned * * * [citation omitted]." *Tracy v. Streater/Litton Industries*, 283 N.W.2d 909, 913, 915 (Minn.1979). The provision in question is relevant to both purposes.

Minn.Stat. § 176.101, subd. 6 furthers the purpose of compensating for lost earning capacity by ensuring that benefits received while an adult are not determined by a wage rate earned as a minor. The method chosen to adjust for lost earning capacity may not be perfect, but it is rationally calculated to achieve its purpose. The legislature could have determined that setting the level of benefits at the maximum rate was appropriate to compensate workers for a lifelong disability. After all, permanently injured minors are disabled throughout their working lives while permanently injured adults could have any number of working years behind them, or the legislature could have decided that a flat rate of compensation was better than speculating over what each individual would have earned as a non-disabled adult. In either case, the legislature has wide discretion in selecting remedies under the Workers' Compensation Act and "the wisdom of legislation is not a consideration for the courts." *Tracy v. Streater/Litton Industries*, 283 N.W.2d 909, 915, 916 (Minn.1979).

The provision compensating minors at the maximum rate also serves the purpose of protecting the lives and safety of employees. If employers must pay higher benefits to injured minors, they will be discouraged from hiring inexperienced employees to do dangerous work.

Appellants argue that the Workers' Compensation Act is intended to apportion the cost of industrial injury fairly among employers and that fair apportionment fails when one group of employers must pay higher benefits to its injured employees simply because those employees are minors. Appellants argue at length that employers who hire minors cannot remain competitive if they must pay underage employees at the maximum rate. Appellants cite no authority for the proposition that the purpose of the act is to apportion the cost of industrial injury fairly among employers. The statute itself states that "[i]t is the intent of the legislature that [the Act] be interpreted so as to assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers who are subject to the provisions of [the Act]." Minn.Stat. § 176.001 (1982). The legislature intended to compensate workers at a *reasonable* cost to employers; the statute does not mention an intent to equalize that cost between individual employers. Thus, as long as the legislature bases its decisions on reasonable considerations, it does not matter that some employers must pay higher benefits than others.

Even if we were to accept the assertion that the act strives to apportion costs fairly, the record does not support the contention that payment to permanently disabled minors at the maximum rate results in industrywide malapportionment. Appellants present no evidence so indicating. Besides, this type of factual determination is more appropriate in the legislature than in the courts. Moreover, the statute limits the workers' compensation payment to minors to the larger of the statewide average weekly wage or the employee's weekly wage, but in no event, greater than the

maximum weekly compensation rate payable.

Appellants also argue that this provision is constitutionally infirm because there are more reasonable methods of providing for the needs of minors. Essentially, appellants are saying that the statute is not narrowly tailored. In support, appellants point to the predecessor of the provision at issue here, which provided for compensation at the rate the "minor or apprentice would probably earn after arriving at legal age or completing the apprenticeship, if uninjured * * *." Minn.Stat. § 176.101, subd. 7 (1969). Appellants also point to the Wisconsin approach, which creates a presumption of maximum benefits which may be rebutted by a showing that an adult worker of the same employer in a comparable position would receive a different compensation benefit. Appellants contend that the only possible reason for rejecting either approach in favor of a flat rate of maximum compensation is administrative ease and that this is a constitutionally insufficient justification.

In effect, appellants are urging review of this statute under the strict scrutiny standard. However, there is no suspect class here that would trigger the higher level of review. Classification by age does not create a suspect class. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Meyers v. Roberts*, 310 Minn. 358, 246 N.W.2d 186 (1976). The modern test for analyzing non-suspect classifications which do not interfere with fundamental rights is whether the classification is totally without a rational basis. *Insurers' Action Council, Inc. v. Heaton*, 423 F.Supp. 921, 926 (D.Minn.1976); 3B Dunnell Minn. Digest 2d *Constitutional Law* § 6.05a (3d ed. 1983). Under the rational basis standard, administrative ease is an adequate justification. *See Hoyt v. Florida*, 368 U.S. 57, 63–64, 82 S.Ct. 159, 163–164, 7 L.Ed.2d 118 (1961). Thus, the statute is constitutional even if the legislature's only purpose in setting minors' compensation at the maximum rate was to avoid a judicial determination in each case of the probable wage earned as a non-disabled adult. As noted above, however, the legislature could have set the rate at the maximum benefit level for other reasons, all of which are rational and, hence, permissible.

Appellants' final argument is that the statute gives some minors a windfall. Appellants hypothesize a minor earning $120 per week who loses a portion of his little finger, a permanent injury. Unable to return to work for a time, he receives temporary total disability at the present maximum rate of $290 per week. He then returns to work before turning 18, ending his eligibility for benefits. In this hypothetical, the benefits received while the employee was unable to work would not be related to the need for compensation during adulthood because compensation terminates when the hypothetical employee returns to work; here, before reaching majority.

This example is simply another way of saying that the statute could be more narrowly tailored. While it is true that the provision could give some minors a windfall unrelated to their actual need, the legislature apparently wished to avoid requiring speculative inquiry as to whether permanently injured minors would return to work before reaching the age of majority. The legislature could have believed that this possible windfall did not impose an unreasonable cost on employers.

Here, there is an evident connection between the distinctive needs of the class and the remedy provided by the statute. Permanently disabled minors have a distinctive need to be compensated for lost earning capacity over a lifetime. The statute meets this need by setting the compensation level at a high rate, thereby ensuring that compensation throughout adulthood is not determined by wages earned as a minor and that compensation will be adequate in light of the permanence of the injury. The statute is rational and therefore constitutional.

Affirmed and the certified question answered in the affirmative.