**STATE of Minnesota, Respondent,**

v.

**Mary Ann PAPP, Appellant.**

**No. Cl–87–600.**

Court of Appeals of Minnesota.

Nov. 17, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas J. Keyes, Beltrami Co. Atty., Timothy R. Faver, Asst. Co. Atty., Bemidji, for respondent.

Gary M. Hazelton, Bemidji, for appellant.

Heard, considered and decided by FORSBERG, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

LANSING, Judge.

This appeal is from the trial court's finding of guilty and order for sentencing for operating a day-care facility without a license. Minn.Stat. § 245.803, subd. 1 (1986). Mary Ann Papp stipulated that she had violated the day-care licensing statute and moved to dismiss on the ground that the statute is unconstitutional. Although the appeal is not properly taken from a final judgment, *see* Minn.R.Crim.P. 28.02, subd. 2, we permit discretionary review and affirm.

## FACTS

The trial court's determination of guilt was based on the following stipulated facts:

A. That Defendant Mary Ann Papp does not have a license issued by any agency of the State of Minnesota for day care operations.

B. On February 24, 1986 and March 27, 1986 Defendant provided day care services for children in violation of [the day-care licensing statute] * * *.

In considering Papp's argument that the licensing statute denied her equal protection, the trial court expressed reservations about the wisdom of the prosecution, but found a rational basis for the exemption of providers who are relatives or who provide care to a single, unrelated family.

## ISSUE

Does the day-care licensing statute deny appellant equal protection of the laws?

## ANALYSIS

The Public Welfare Licensing Act requires that day-care facilities be licensed. Minn.Stat. § 245.783 (1986). The act, however, does not apply to certain types of care or providers, excluding, in relevant part:

(1) Day care or residential care provided by a relative to related persons;

\* \* \* \* \* \*

(3) Day care provided for persons from a single unrelated family for any length of time;

Minn.Stat. § 245.791. The act broadly defines the term "related":

"Related" means any of the following relationships by marriage, blood, or adoption: parent, grandparent, brother, sister, stepparent, stepsister, stepbrother, uncle, aunt, child, niece, nephew. It shall also include a legally appointed guardian.

Minn.Stat. § 245.782, subd. 10.

These exclusions establish a legislative distinction between day-care providers who are related to the child(ren) they care for and those who are unrelated. The act further distinguishes between providers who care for unrelated children from one family, and those who care for unrelated children from more than one family.

Papp concedes that these classifications do not involve a suspect class or a fundamental right. When an equal protection challenge does not involve a suspect class or a fundamental right, the constitutional standard of review is the rational basis test. *Metropolitan Rehabilitation Services, Inc. v. Westberg*, 386 N.W.2d 698, 701 (Minn.1986). In assessing the constitutional validity of statutory classifications, three factors are to be considered:

(1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*Miller Brewing Co. v. State*, 284 N.W.2d 353, 356 (Minn.1979).

Papp concedes that ensuring minimum levels of care for the health, safety and development of children placed in day care is a legitimate legislative objective, but con-

tends that the legislative classifications are not reasonably related to the goals to be achieved because there is no useful distinction to be made between "day care" and care provided by relatives, or between "day care" and "babysitting." We disagree.

The state clearly has a legitimate interest in regulating day care:

> [W]e think, as to day care facilities, the Act clearly mandates that small children in a licensed day care facility are a particular protected class. The class consists of uniquely vulnerable persons: small children, often infants, left by their working parents in a home other than their own, and left in the care of another person for some period of less than 24 hours of the day.

> \*　　\*　　\*　　\*　　\*　　\*

> The commissioner has promulgated detailed rules governing the needs and well-being of the children in day care facilities. Clearly, the government here is doing more than benefiting the general public and its immediate concern is for the children.

*Andrade v. Ellefson*, 391 N.W.2d 836, 842 (Minn.1986).

 The classifications drawn by the legislature are not manifestly arbitrary. Although inadequate care may be given by care providers exempted from the licensing statute, the equal protection clause does not require the legislature to strike at all evils at the same time or in the same way. *Cf. Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981) (state could constitutionally ban environmentally harmful container while permitting other containers also harmful in some ways). The state may adopt regulations which only partially ameliorate the perceived problems of substitute care for children if it does so by classifications reasonably related to the objective. *See id.* at 462–63, 101 S.Ct. at 723.

 In addition, extending state regulation to all substitutes for parental care would impose a substantial administrative burden. *See Andrade*, 391 N.W.2d at 839–40 n. 4 (noting the county's argument that funding and staffing are inadequate to cover large numbers of licensed day-care centers). Administrative ease is an adequate justification for a legislative classification under the rational basis standard. *Bituminous Casualty Corp. v. Swanson*, 341 N.W.2d 285, 289 (Minn.1983). Extending licensing and inspection to related day-care providers and those caring for children from only one family would substantially increase the administrative burden.

Finally, the distinctions between types of day-care providers are genuine and relevant to the purpose of the law. The statute does not attempt to impose minimum levels for all types of child care. Care provided directly by parents is subject to the presumption that natural parents are the fit and proper custodians of their children. *In re Welfare of A.R.W.*, 268 N.W. 2d 414, 417 (Minn.1978), *cert. denied*, 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978). The state may intervene in parental care under the neglect and dependency statutes, but only subject to significant procedural protections. *See Matter of Welfare of Rosenbloom*, 266 N.W.2d 888 (Minn.1978); Minn.Stat. § 260.155 (before a child is found neglected, the parents have a right to a hearing and the assistance of counsel, appointed if necessary).[1]

It is reasonable to assume that relatives and care providers employed exclusively by the parent(s) are more closely supervised by the parent(s) than a day-care facility operated as a business. Since parents are presumed to provide proper care, the rationality of excluding care providers who are subject to closer parental supervision is "at least debatable." *See Clover Leaf Creamery Co.*, 449 U.S. at 464, 101 S.Ct. at 724 (legislative classification will be upheld under the rational basis test if the rationality of the classification is "at least debatable"). Although we doubt that the statute could have been more narrowly drawn, even that possibility is not fatal if

---

1. While it is not clear that the state could regulate substitute care provided by relatives other than through neglect and dependency statutes, we do not decide that issue.

there is an evident connection between the distinctive needs of the class and the remedy provided by the statute.

*Bituminous Casualty,* 341 N.W.2d at 289. There is an evident connection between the needs of children protected by the licensing statute and the remedy it provides.

## DECISION

The day-care licensing statute did not deny appellant equal protection.

Affirmed.